JUDGE WOODS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**



Huxley Capital Corporation,

Plaintiff,

vs.

OAS S.A., Construtora OAS S.A., OAS Investimentos S.A., OAS Infraestrutura S.A., OAS Engenharia e Construção S.A.,

Defendants.

CIVIL ACTION NO.: _____

**COMPLAINT AND JURY DEMAND**

RECEIVED
MAR 05 2015
U.S.D.C. S.D. N.Y.
CASHIERS

## Nature of the Action

1.      In November 2014, Defendant OAS S.A. ("OAS")—a large Brazilian construction company—was named in a massive corruption scandal in Brazil.  Brazilian prosecutors accused the company of charging inflated fees on construction contracts with Brazil's state-owned oil company, Petróleo Brasileiro S.A. – Petrobras ("Petrobras"), and of funneling kickbacks to Petrobras executives and high-level Brazilian politicians.  As a result of the scandal, Defendant OAS's president and other executives have been arrested, and Defendant OAS has been temporarily banned from entering into contracts with Petrobras.

2.      These scandals cut off Defendant OAS's access to capital and plunged it into disarray.  Financially desperate, Defendant OAS responded by defrauding its creditors, including Plaintiff.  As explained in this Complaint, Defendant OAS has plundered the assets of its two most valuable subsidiaries—Defendants Construtora OAS S.A. ("OAS Construction") and OAS Investimentos S.A. ("OAS Investments")—to shield those assets from the subsidiaries' creditors, including Plaintiff.  Plaintiff brings this action to hold Defendants accountable for their fraud.

3.       Plaintiff is the beneficial owner of notes issued by two of Defendant OAS's other subsidiaries: (1) 8.00% Senior Notes due 2021 ("2021 Notes") issued by OAS Finance Limited ("OAS Finance"); and (2) 8.25% Senior Notes due 2019 ("2019 Notes") issued by OAS Investments GmbH ("OAS GmbH").

4.       Importantly, the 2019 Notes and 2021 Notes (together, the "Notes") are unconditionally and irrevocably guaranteed by each of Defendants OAS, OAS Construction, and OAS Investments.  We refer to Defendants OAS Construction and OAS Investments as the "Subsidiary Guarantors," and we refer to their guarantees under the Notes as the "Subsidiary Guarantees."  A diagram showing the relationship among the Defendants and certain non-parties is contained in paragraph 21 below.

5.       The Subsidiary Guarantees are especially important to the beneficial owners of the Notes (the "Noteholders"), including Plaintiff.  That is because, although both Subsidiary Guarantors are (and at all relevant times have been) insolvent, they hold most of the assets of the OAS enterprise.  The Subsidiary Guarantees provide that, if there is a default on the Notes, the Noteholders can recover directly from the (sizeable) assets of the Subsidiary Guarantors.

6.       The guarantee on the Notes provided by Defendant OAS Investments (the "OAS Investments Guarantee") is highly valuable to the Noteholders for an additional reason: Other than the Noteholders, very few of the creditors of Defendant OAS (the parent of Defendant OAS Investments) are also creditors of Defendant OAS Investments.  The OAS Investments Guarantee thus puts the Noteholders (including Plaintiff) first in line to recover from the assets of Defendant OAS Investments.  That is, if there is a default on the Notes, the creditors of Defendant OAS cannot recover anything from Defendant OAS Investments until the Noteholders' claims are first paid in full.  The OAS Investments Guarantee thus makes the

2

Noteholders "structurally senior" to the creditors of Defendant OAS with respect to the assets of Defendant OAS Investments.

7.      In a series of related transactions undertaken in December 2014 in the midst of the corruption scandal, Defendants—OAS and four entities that OAS wholly owns either directly or indirectly (OAS Construction, OAS Investments, OAS Engineering and Construction, and OAS Infrastructure, each defined more fully below)—have stripped the Subsidiary Guarantors of their prime assets.  Defendants have done so by transferring these assets to OAS entities that, critically, are not obligors or guarantors of the Notes, and then by merging Defendant OAS Investments into Defendant OAS, thus eviscerating the OAS Investments Guarantee. Defendants undertook these actions in a deliberate and transparent effort to put the Subsidiary Guarantors' valuable assets beyond the reach of the Noteholders, including Plaintiff.

8.      First, on December 1, 2014, Defendant OAS Construction transferred various assets worth at least $301,104,684 Brazilian reais ("R")—more than USD $117 million—to Defendant OAS Engenharia e Construção S.A. ("OAS Engineering and Construction"), a wholly-owned subsidiary of Defendant OAS that is not an obligor or guarantor of the Notes. Defendant OAS Construction did not receive any consideration whatsoever in return for the transfer.  The purpose of this transfer was to place these assets beyond the reach of Defendant OAS Construction's creditors, including Plaintiff.

9.      Second, on December 26, 2014, Defendant OAS Investments transferred its most valuable asset—a 24% ownership stake in a company called Investimentos e Participações em Infraestrutura SA - INVEPAR ("Invepar"), worth upwards of R $3 billion (more than USD $1 billion)—to its wholly-owned subsidiary, Defendant OAS Infraestrutura S.A. ("OAS Infraestrutura"), which is not an obligor or guarantor of the Notes.  Defendant OAS Investments

received, at best, paltry consideration in return for the transfer.  The purpose of this transfer was to place the Invepar shares beyond the reach of Defendant OAS Investments' creditors, including Plaintiff.

10.     Third, on the same day that the Invepar shares were siphoned out of Defendant OAS Investments, Defendant OAS Investments was merged into its parent, Defendant OAS. Through the merger, Defendant OAS Investments transferred all of its assets and liabilities to Defendant OAS, and Defendant OAS Investments ceased to exist.

11.     The merger is (and was intended to be) enormously prejudicial to the Noteholders because it has nullified the OAS Investments Guarantee and, consequently, severely reduced the amount of money the Noteholders can recover on the Notes.  As stated above, in contrast to the Noteholders, the vast majority of creditors of Defendant OAS are not creditors of Defendant OAS Investments.  As a result, before the merger, the OAS Investments Guarantee ensured that these creditors of Defendant OAS could recover from the assets of Defendant OAS Investments, if at all, only after the Noteholders' claims were first paid in full.

12.     By pooling together the assets of Defendants OAS and OAS Investments, however, the merger has elevated the creditors of Defendant OAS to an equal footing with the Noteholders with respect to the assets of Defendant OAS Investments, thus eviscerating the OAS Investments Guarantee and the structural seniority it had provided to the Noteholders.  This severely prejudices the Noteholders, because the combined assets of Defendants OAS and OAS Investments are not nearly enough to satisfy the claims of their creditors.  Accordingly, as a result of the merger, the Noteholders (including Plaintiff) will recover far less on the Notes.

13.     Each of the transfers described herein was an intentional effort by Defendants to defraud their creditors.  Indeed, the transfers were orchestrated with the hallmarks of fraud:

(1) They were transfers of valuable assets among insiders, including two transfers from indebted corporations to affiliated shell corporations without creditors; (2) they were made for little or no consideration at a time when Defendants were insolvent, had unreasonably small capital, and knew that they could not pay their debts as they matured; (3) they were conducted in secrecy and not disclosed to the Noteholders and the public until weeks later (and, conveniently, after Defendants defaulted on their payment obligations under the 2021 Notes and under numerous other debt instruments); (4) they were plagued by multiple conflicts of interest; and (5) they all were undertaken for the actual purpose of preventing the Noteholders, including Plaintiff, from reaching the transferred assets.

14.    This action seeks to avoid and set aside these transfers, and to recover the transferred property or its value.  As set out below, by orchestrating these transfers, Defendants have committed actual and constructive fraudulent conveyances in violation of New York Debtor and Creditor Law §§ 273–76 (Counts 1–6).  The transfers have also unjustly enriched Defendant OAS, the mastermind of Defendants' fraudulent scheme (Count 7).

### Parties

15.    Plaintiff Huxley Capital Corporation is a Delaware corporation with its principal place of business in New York.

16.    Defendant OAS S.A. ("OAS") is a Brazilian corporation with its headquarters at Avenida Angelica, No. 2330/2346/2364, 9th floor, room 904, Consolation, CEP 01228-200, São Paulo, Brazil.  Defendant OAS wholly owns, directly or indirectly, each of the other Defendants.

17.    Defendant Construtora OAS S.A. ("OAS Construction") is a Brazilian corporation with its headquarters at Avenida Angelica, No. 2330/2346/2364, 7th floor, room 720, Consolation, CEP 01228-200, São Paulo, Brazil.  Defendant OAS owns more than 99% of

the shares issued by Defendant OAS Construction.  The remaining shares are owned by non-party OAS Engenharia S.A., which is wholly owned by Defendant OAS.

18.    Defendant OAS Investimentos S.A. ("<u>OAS Investments</u>") is a Brazilian corporation with its headquarters at Avenida Angelica, No. 2220, 10th floor, room 101, Consolation, CEP 01228-200, São Paulo, Brazil.  Defendant OAS Investments is wholly owned by Defendant OAS.

19.    Defendant OAS Infraestrutura S.A. ("<u>OAS Infrastructure</u>") is a Brazilian corporation with its headquarters at Avenida Angelica, No. 2,330/2,346/2,364, 9th floor, room 908, Consolation, CEP 01228-200, São Paulo, Brazil.  Defendant OAS Infrastructure is wholly owned by Defendant OAS Investments.

20.    Defendant OAS Engenharia e Construção S.A. ("<u>OAS Engineering and Construction</u>") is a Brazilian corporation with its headquarters at Avenida Angelica, No. 2330/2346/2364, 7th floor, room 705, Consolation, CEP 01228-200, São Paulo, Brazil. Defendant OAS Engineering and Construction is wholly owned by Defendant OAS.

21.    The relationship among the Defendants and certain non-parties within the OAS corporate family is shown in the diagram below:



**Jurisdiction and Venue**

22.    This Court has subject matter jurisdiction over this action based on diversity of citizenship under 28 U.S.C. § 1332.

23.    This Court has personal jurisdiction over Defendants because (i) in each of the indentures governing the Notes, Defendant OAS voluntarily and irrevocably submitted to the personal jurisdiction of the courts of the United States located in the Borough of Manhattan, New York City, New York for any legal action, suit, or proceeding with respect to its obligations, liabilities or any other matter arising out of or in connection with the Notes or such indentures (2021 Indenture § 13.12(1); 2019 Indenture § 13.12(1)); (ii) in the offering memoranda for the

Notes, Defendants OAS, OAS Construction, and OAS Investments consented to the jurisdiction of the courts of the United States located in the Borough of Manhattan, New York City, New York with respect to any action that may be brought in connection with the Notes or the indenture governing the Notes (2021 Notes Offering Memorandum at 148; 2019 Notes Offering Memorandum at 151); (iii) Defendant OAS Infrastructure is the alter ego of Defendant OAS Investments; and (iv) Defendant Engineering and Construction is the alter ego of Defendant OAS.  True and correct copies of the indenture governing the 2021 Notes (the "<u>2021 Indenture</u>") and offering memorandum for the 2021 Notes (the "<u>2021 Notes Offering Memorandum</u>") are attached hereto as Exhibits A and B, respectively.  True and correct copies of the indenture governing the 2019 Notes (the "<u>2019 Indenture</u>") and offering memorandum for the 2019 Notes (the "<u>2019 Notes Offering Memorandum</u>") are attached hereto as Exhibits C and D, respectively.

24.     Defendants OAS, OAS Investments, and OAS Construction also have irrevocably appointed an agent for service of process in Manhattan for any legal action, suit, or proceeding with respect to their obligations, liabilities, or any other matter arising out of or in connection with the Notes or the Indentures.  (*See* Ex. A at § 13.12(2); Ex. B at 148; Ex. C at § 13.12(2); Ex. D at 151.)

25.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and because the indentures governing the Notes fixes the venue for suits on the Notes as the Borough of Manhattan, New York City, New York.

**<u>Applicable Law</u>**

26.     The indentures expressly state that all matters arising out of or relating in any way whatsoever to the indentures and the Notes (whether in contract, tort or otherwise) shall be governed by the laws of the state of New York.  (*See* Exs. A & C at § 13.08.)

**Factual Allegations**

**A.     The Subsidiary Guarantors Comprise Most Of Defendant OAS's Assets**

27.     Defendant OAS is among the largest infrastructure companies in Brazil.  It focuses its operations on heavy engineering and equity investments in infrastructure projects for both public and private clients throughout Latin America and Africa.  It works across a variety of industries, including transportation, urban infrastructure, oil and gas, energy, industrial facilities, and sanitation, among others.

28.     Defendant OAS is a holding company that operates in two divisions through the Subsidiary Guarantors: (1) a heavy engineering division, which is operated through Defendant OAS Construction; and (2) an investment division, which is operated through Defendant OAS Investments.

29.     The Subsidiary Guarantors comprise the bulk of the value of the OAS enterprise. According to Defendant OAS's financial statements as of September 30, 2014, the book value of Defendant OAS's assets was R $7.7 billion.  Of that amount, nearly 70% is attributed to the Subsidiary Guarantors: R $2.8 billion to Defendant OAS Investments, and R $2.4 billion to OAS Construction.

**B.     The Structural Seniority Of Defendant OAS Investments' Creditors**

30.     At all relevant times, Defendant OAS has been heavily indebted.  For example, Defendant OAS reported liabilities of R $6.6 billion as of September 30, 2014.  Since then, substantial amounts of its debt have been accelerated (as described more fully below).[1]

---

[1] Although Defendant OAS's balance sheet as of September 30, 2014, purports to show that Defendant OAS was balance-sheet solvent, in fact, upon information and belief, Defendant OAS was insolvent at that time, and was rendered further insolvent by the fraudulent transfers identified in this Complaint as shown by the facts alleged below and herein.

31.     Importantly, the vast majority of Defendant OAS's creditors are **not** creditors of Defendant OAS Investments.  For example, Defendant OAS reported liabilities of R $2.4 billion on outstanding debentures as of September 30, 2014, but only R $307 million of that amount (less than 13%) is guaranteed by Defendant OAS Investments.

32.     The fact that few creditors of Defendant OAS also are creditors of Defendant OAS Investments is highly significant.  It means that (prior to the merger of Defendants OAS and OAS Investments) the creditors of Defendant OAS Investments were structurally senior to the creditors of Defendant OAS with respect to the assets of Defendant OAS Investments.  That is, the creditors of Defendant OAS could recover from the assets of Defendant OAS Investments, if at all, only after the creditors of Defendant OAS Investments were paid in full from those assets.  In colloquial terms, the creditors of Defendant OAS Investments were "first in line" to recover from the assets of Defendant OAS Investments, while the creditors of Defendant OAS were (at best) a distant second.

### C.     Plaintiff Is A Creditor Of The Subsidiary Guarantors

33.     Plaintiff, as a beneficial owner of the Notes, is among the creditors of the Subsidiary Guarantors, and thus is structurally senior to the many creditors of Defendant OAS that are not also creditors of Defendant OAS Investments.

34.     The 2021 Notes were issued on July 2, 2014, pursuant to the 2021 Indenture, dated as of July 2, 2014, and a first supplemental indenture, dated as of September 2, 2014, among (1) OAS Finance as Issuer; (2) Defendants OAS, OAS Investments, and OAS Construction as guarantors; and (3) Deutsche Bank Trust Company Americas as trustee, registrar, transfer agent, and paying agent.

35.     The 2019 Notes were issued on October 19, 2012, pursuant to the 2019 Indenture (together with the 2021 Indenture, the "Indentures"), dated as of October 19, 2012, and a first supplemental indenture, dated as of October 15, 2014 among (1) OAS GmbH as Issuer; (2) Defendants OAS, OAS Investments, and OAS Construction as guarantors; (3) Deutsche Bank Trust Company Americas as trustee, registrar, transfer agent, and paying agent; and (4) Deutsche Bank Luxembourg S.A. as Irish Listing Agent, Irish Transfer Agent, and Irish Paying Agent.

36.     The Notes are irrevocably and unconditionally guaranteed by Defendants OAS, OAS Investments, and OAS Construction (collectively, the "Guarantors").   The Indentures provide that each of the Guarantors "irrevocably and unconditionally guarantees . . . jointly and severally . . . the full, due and punctual payment . . .  of the principal (and premium, if any), interest, Additional Amounts and all other amounts payable by the Issuer under this Indenture as they come due."  (Exs. A & C at §§ 10.01, 11.01.)  The Indentures provide that, "[u]pon failure by the Issuer to pay punctually any such amount," each of the Guarantors "shall forthwith pay the amount not so paid at the place and time and in the manner specified in this Indenture."  (Id.) The Indentures further provide that the obligations of the Guarantors "hereunder are unconditional and absolute."  (Exs. A & C at §§ 10.02, 11.02.)

37.     By virtue of the Subsidiary Guarantees, Plaintiff is a creditor of each of the Subsidiary Guarantors.  The structural seniority provided by those guarantees, especially by the OAS Investments Guarantee, was essential to Plaintiff's decision to purchase the Notes.

38.     The Notes were marketed and sold in the United States, including in New York. The indenture trustee for each of the Notes has offices in New York and New Jersey.  The underwriters and their affiliates are United States broker-dealers.  The Notes are nominally held

by the Depository Trust Company, through its nominee Cede & Co.  On information and belief, the Notes are held in New York.

### D.    Defendants' Hopeless Financial Condition

39.    Defendants orchestrated the fraudulent transfers (which are described in the succeeding sections of this Complaint) with the intent to defraud their creditors, including Plaintiff.  Moreover, Defendants did so at a time when they were each insolvent and/or were thereby rendered insolvent, were left with unreasonably small capital, and knew that the transfers would leave them unable to pay their debts as those debts matured, as shown by the following facts, among others.

40.    In November 2014, Defendant OAS and certain of its subsidiaries were directly implicated in a massive bribery scandal in Brazil known as "Operation Car Wash."   In connection with that scandal, Brazilian federal prosecutors accused Defendant OAS of charging inflated fees on construction contracts with Brazil's state-owned oil company, Petrobras, and funneling kickbacks to Petrobras executives and high-level Brazilian politicians.

41.    On November 14, 2014, José Aldemário Pinheiro Filho, president of Defendant OAS and chief executive of the Subsidiary Guarantors, was arrested in connection with the corruption scheme. Numerous other OAS executives were arrested as well, including Agenor Franklin Magalhães Medeiros, José Ricardo Nogueira Breghirolli, Mateus Coutinho de Sá Oliveira, and Alexandre Portela Barbosa.  According to news reports, prosecutors have formally charged these executives with corruption, money laundering, and the formation of a criminal organization. On February 20, 2015, the Ministério Público Federal (the Brazil Federal Prosecutors office) filed a complaint against Defendants OAS and OAS Construction (among other related parties and executives) alleging improper conduct in connection with Operation Car

Wash and seeking fines and penalties of approximately R $1 billion and a ban on government contracting.

42.     The corruption scandal has dramatically impaired the financial position of Defendants.   On November 19, 2014, Standard & Poor's downgraded the credit ratings of Defendants OAS and OAS Finance from BB- to B+ with a negative outlook, noting the uncertainties created by the ongoing corruption scandal, including the possibility of business sanctions under Brazil's anti-corruption laws and higher refinancing risks even in the absence of such penalties.

43.     On December 8, 2014, holders of certain debt securities issued by Defendant OAS and guaranteed by Defendant OAS Construction (namely, the 9th Series Convertible Debentures) declared an acceleration of principal (approximately R $105.88 million, which may include some accrued interest) based on the November 19, 2014, ratings downgrade and the terms of the applicable indentures.  As a result of the notice, Defendants OAS and OAS Construction became obligated to pay the above amount on January 5, 2015.

44.     On December 19, 2014, Brazilian newspaper *Folha de S.Paulo* reported that Defendant OAS has been renegotiating debts with creditors and laying off employees, amid the crisis generated by its involvement in the corruption scandal.  According to the news report, Defendant OAS has hired a financial advisor (G5 | Evercore) to help it seek partners and sell stakes it owns in other companies.  The article reported that Defendant OAS also has dismissed upwards of "thousands" of workers across Brazil.

45.     On December 21, 2014, Bloomberg reported that one of Defendant OAS's other debt securities (namely, USD $875 million of notes due 2019) "have plummeted 33 percent this month to 30 cents on the dollar."  Bloomberg further reported that "Moody's Investors Service

cut OAS's rating one level to B2, five levels below investment grade, citing the builder's 'ongoing judicial' woes."

46.     Also in December 2014, Defendant OAS drew R $200 million from a R $600 million line of standby credit that it had with a pool of banks.  On information and belief, Defendants depended on the availability of this line of credit to meet their debt obligations.  On January 8, 2015, however, Debtwire reported that Defendant OAS had lost access to the remaining R $400 million line of credit because of the company's rating downgrades.  According to a source quoted by Debtwire, "[t]he company missed the opportunity to take the [R $400 million] in December and now the funds are not available anymore."  The Debtwire article further reported that, in addition to financial advisor G5 | Evercore, Defendant OAS also has hired legal advisors Mattos Filho Advogados and White & Case LLP to help form a restructuring plan.

47.     On December 29, 2014, Petrobras issued a press release stating that, in light of the charges made against Defendant OAS in the Operation Car Wash scandal, Defendant OAS has been temporarily banned from contracting with Petrobras and from participating in bids for such contracts.

48.     On January 2, 2015, OAS Finance and the Defendant Guarantors failed to make a scheduled semiannual interest payment on the 2021 Notes in the amount of USD $16 million. On January 6, 2015, the trustee for the 2021 Notes sent a notice to the Noteholders, enclosing a January 2, 2015, press release issued by Defendant OAS acknowledging the missed payment and stating that Defendant OAS and its financial and legal advisors are attempting to achieve a financial restructuring.  The press release states that Defendant OAS has initiated discussions

with certain key creditors to achieve an organized financial restructuring, but that there is no assurance that the restructuring effort will be successful.

49.     On January 5, 2015, in response to the January 2 missed interest payment on the 2021 Notes, Standard & Poor's lowered the credit rating on Defendant OAS and OAS Finance's senior unsecured debt from B+ to CC.  Fitch Ratings similarly downgraded the Foreign Currency (FC) and Local Currency (LC) Issuer Default Ratings of Defendants OAS and OAS Construction from B+ to C and their long-term National Scale ratings from BBB+ to C.   Fitch Ratings noted that the "OAS Group is facing difficulties in accessing credit lines" and has "mentioned its intention to explore the sale of certain assets in its portfolio."

50.     Also on January 5, 2015, Defendant OAS failed to redeem the 9th Series Convertible Debentures (which had been accelerated by debenture holders on December 8, 2014, as discussed above), as required by the terms of the applicable indentures.  The trustee for the debenture holders sent a letter to Defendants OAS and OAS Construction stating that payment of the approximately R $105.88 million owed on the debentures would now come due on January 6, 2015.

51.     On January 6, 2015, Defendants OAS and OAS Construction stated that they did not intend to pay the accelerated amounts due on the 9th Series Convertible Debentures.  To date, neither Defendant has made the required payment.

52.     On January 7, 2015, Standard & Poor's downgraded its global corporate credit rating and national scale rating on Defendant OAS to a D ("default").  S&P also downgraded the global and national scale issue-level ratings on the 2021 Notes and Defendant OAS's 9th Debenture issuance from a CC to a D.  S&P deemed it "highly likely the company will face a

general default" and that "all outstanding debt would likely be subject to an ongoing restructuring process."

53.     On January 8, 2015, Debtwire reported that "[w]ith the loss of the [R $400 million] credit facility, an asset sale is seen as the only way to address short-term liquidity pressure, according to multiple sources familiar with the matter."

54.     Also on January 8, 2015, the trustee for the holders of the 10th Series Non-Convertible Debentures issued by Defendant OAS and guaranteed by Defendant OAS Construction informed Defendant OAS that, as a result of the acceleration of the 9th Series Convertible Debentures, the 10th Series Non-Convertible Debentures had automatically accelerated.  Accordingly, the principal amount of the 10th Series Non-Convertible Debentures (R $167.975 million as of September 30, 2014) became due and payable.  To date, on information and belief, neither Defendant has made the required payment.

55.     On January 13, 2015, the trustee for the 3rd Series Non-Convertible Debentures issued by Defendant OAS informed Defendant OAS that, as a result of the acceleration of the 9th Series Convertible Debentures, the 3rd Series Non-Convertible Debentures had also automatically accelerated.  Accordingly, the principal amount of the 3rd Series Non-Convertible Debentures (R $310.674 million as of September 30, 2014) became immediately due and payable.  To date, on information and belief, Defendant OAS has not made the required payment.

56.     On January 22, 2015, Debtwire reported that Defendant OAS is "working on selling assets and creating a restructuring plan after local financing has dried up following charges against the company in the government's '[Operation] Car Wash' corruption investigation, and a ban on OAS bidding for government contracts."

57.     On January 26, 2015, OAS Finance and the Defendant Guarantors failed to make a scheduled semiannual interest payment on another series of bonds that had been issued by OAS Finance and guaranteed by the Defendant Guarantors (namely, OAS Finance's USD $500 million Senior Unsecured 8.875% Perpetual Notes).   To date, on information and belief, Defendants have not made the required payment.

58.     On February 3, 2015, after OAS Finance and the Defendant Guarantors had failed for thirty days to cure the default arising from their January 2, 2015, missed interest payment on the 2021 Notes, a noteholder, by notice to Defendants, accelerated the principal and interest on the 2021 Notes (totaling approximately USD $418.8 million).   As a result of the acceleration, OAS Finance and the Defendant Guarantors became obligated to pay that amount immediately.   To date, OAS Finance and the Defendant Guarantors have failed to make the required payment.

59.     The various payment defaults described above also have resulted in defaults by OAS GmbH, Defendant OAS, and the Subsidiary Guarantors on the 2019 Notes.

60.     On March 4, 2015, Debtwire reported in its Latin America Bond Tracker that "OAS has not yet asked for bankruptcy protection, but is expected to do so soon."

61.     Even though Defendants have repeatedly failed to make required payments on various debt securities (including the 2021 Notes), as detailed above, Defendant OAS recently made a payment of R $16.8 million to holders of the 8th Series Non-Convertible Subordinated Debentures.   On information and belief, the ultimate beneficiary of this debenture is an affiliate of Defendant OAS.   Thus, while Defendant OAS has failed to pay its external creditors (including Plaintiff), it has continued to pay its own affiliates.

E.     **Defendants' Fraudulent Transfers**

62.     As described above, Defendants have responded to their desperate financial situation by trying to restructure their debt out of court.  Unfortunately, however, Defendants have done so by committing a series of brazen fraudulent transfers in December 2014 that were intended to, and have, defrauded the Noteholders, including Plaintiff.  As set out below, Defendants (1) looted Defendant OAS Construction by transferring valuable assets to a non-debtor shell entity without receiving any consideration in return; (2) looted Defendant OAS Investments by transferring its most valuable asset (shares of Invepar) to a non-debtor shell entity in return for (at most) paltry consideration; and (3) caused Defendant OAS Investments (stripped of the Invepar shares) to merge into Defendant OAS, thereby eviscerating the OAS Investments Guarantee and, with it, the Noteholders' structural seniority over creditors of Defendant OAS with respect to the assets of Defendant OAS Investments.

### 1.     The Looting Of Defendant OAS Construction

63.     On December 1, 2014, Defendant OAS Construction transferred certain of its assets to Defendant OAS Engineering and Construction in order to shield those assets from Defendant OAS Construction's creditors, including Plaintiff.

64.     The minutes of the December 1, 2014, meeting of Defendant OAS Engineering and Construction at which the transfer was approved describe the assets as (1) technical assets, executive projects, and certifications; (2) machinery and equipment; and (3) accounts payable and receivable with related parties (the "OAS Construction Assets").  We refer to the transfer of the OAS Construction Assets as the "OAS Construction Asset Transfer."

65.     Defendant OAS Engineering and Construction is a wholly-owned subsidiary of Defendant OAS.   Significantly, unlike Defendant OAS Construction, Defendant OAS

18

Engineering and Construction is not an obligor or guarantor of any of the Notes.  Although, on information and belief, Defendant OAS Engineering and Construction had no creditors at the time of the OAS Construction Asset Transfer, the transfer leaves the creditors of Defendant OAS Construction, including Plaintiff, with no direct claim on the transferred assets.

66.    The OAS Construction Assets had a value of at least R $301,104,684.  This is shown by the fact that, in connection with the OAS Construction Asset Transfer, Defendant OAS Construction cancelled 301,104,684 of its common shares, reducing its share capital by R $301,104,684.

67.    On information and belief, Defendant OAS Construction did not receive ***any*** consideration from any Defendant (or from any other entity) in return for the OAS Construction Assets.  The minutes from the December 1, 2014, meetings at which Defendants OAS Construction and OAS Engineering and Construction approved the OAS Construction Asset Transfer do not identify any such consideration.

68.    The same two individuals—Alexandre Louzada Tourinho and Dilson de Cerqueira Paiva Filho—approved the OAS Construction Asset Transfer on behalf of both Defendants OAS Construction and OAS Engineering and Construction.

69.    In connection with the OAS Construction Asset Transfer, both Defendants OAS Construction and OAS Engineering and Construction were required to obtain a report valuing the OAS Construction Assets.  According to a Protocol and Justification for the OAS Construction Asset Transfer contained in the Defendants' meeting minutes, the valuation report was to be issued by a company that did not face any conflict of interest.

70.    In fact, however, Defendants OAS Construction and OAS Engineering and Construction each relied on the same valuation report produced by a Brazilian company named

2PAR Gestão em Negócios S/S Ltda. ("2PAR").  By producing a report for parties on both sides of the OAS Construction Asset Transfer, 2PAR faced an obvious conflict of interest.

71.    Although the OAS Construction Asset Transfer was consummated on December 1, 2014, Defendants OAS Construction and OAS Engineering and Construction did not publicly disclose the transfer to the Noteholders.  The OAS Construction Asset Transfer was not publicly disclosed until Defendants OAS Construction and OAS Engineering and Construction published their December 1, 2014 meeting minutes on January 20, 2015, after OAS Finance and the Defendant Guarantors failed to make the required January 2, 2015, interest payment on the 2021 Notes.  None of the Defendants has provided any explanation, let alone justification, for the near two-month delay in disclosing the OAS Construction Asset Transfer.

72.    Although Defendant OAS Engineering and Construction now nominally owns the OAS Construction Assets, Defendant OAS Engineering and Construction is a mere department and alter ego of Defendant OAS, and any distinctions between the two corporations should be disregarded.

73.    On information and belief, Defendant OAS exercised complete domination over Defendant OAS Engineering and Construction with respect to the OAS Construction Asset Transfer, as shown by the following facts and additional facts that Plaintiff expects to obtain through discovery:

a.    Defendant OAS Engineering and Construction is a wholly-owned subsidiary of Defendant OAS;

b.    Defendants OAS and OAS Engineering and Construction share the same office address;

c.    Defendant OAS Engineering and Construction was formed in July 2013 and was capitalized with a mere R $100, which is the same share capital Defendant OAS Engineering and Construction had on the date of the OAS Construction Asset Transfer;

d.      none of Defendants' financial statements indicate that Defendant OAS Engineering and Construction conducts any operations or possesses any assets (other than R $100 in share capital and, after the OAS Construction Asset Transfer, the OAS Construction Assets);

e.      Defendant OAS's financial statements do not contain any financial information for Defendant OAS Engineering and Construction, even though such information is presented for certain other subsidiaries of Defendant OAS;

f.      Defendant OAS Engineering and Construction does not publish its own financial statements; and

g.      the President and Chairman of the Board of Defendant OAS Engineering and Construction on the date of the OAS Construction Asset Transfer (Alexandre Louzada Tourinho) was the Secretary of Defendant OAS until April 3, 2014.

74.     Defendant OAS used its domination over Defendant OAS Engineering and Construction to orchestrate the OAS Construction Asset Transfer with the actual intent to hinder, delay, and defraud the Noteholders, including Plaintiff, by transferring the OAS Construction Assets to an entity (Defendant OAS Engineering and Construction) that is not liable on the Notes, to prevent the Noteholders from reaching those assets.

## 2.      The Looting Of Defendant OAS Investments

75.     Prior to December 26, 2014, Defendant OAS Investments owned 104,881,660 shares of Invepar (the "Invepar Shares"), which constituted 24.4% of Invepar's total outstanding shares.  Invepar is a Brazilian corporation with long-term concessions for the structuring and operation of infrastructure projects in Latin America, including toll roads, highways, subway lines, and airports.

76.     The Invepar Shares were among Defendant OAS Investments' most valuable and liquid assets.  Valor Econômico, a Brazilian newspaper, recently described the Invepar Shares as Defendant OAS Investments' "crown jewel" asset.

77.     In its financial statements for the period ended September 30, 2014, Defendant OAS Investments valued the Invepar Shares at approximately R $1.46 billion, out of total assets of approximately R $3.8 billion, meaning that the Invepar Shares comprised more than one-third of the assets of Defendant OAS Investments.

78.     In fact, the Invepar Shares are worth much more than R $1.46 billion.  This is shown by the fact that Invepar's other owners—three Brazilian pension funds that, like Defendant OAS Investments, each owns approximately 25% of Invepar's shares—valued their respective stakes at between approximately R $2.5 billion and R $2.7 billion as of December 31, 2013.  In addition, Valor Econômico reported on January 21, 2015, that the Invepar Shares are "valued at about R $3 billion."

79.     On December 26, 2014, Defendant OAS Investments transferred all of the Invepar Shares to its wholly-owned subsidiary, Defendant OAS Infrastructure, in order to shield the valuable Invepar shares from Defendant OAS Investments' creditors, including Plaintiff.  We refer to the transfer of the Invepar Shares as the "Invepar Share Transfer."

80.     Significantly, unlike Defendant OAS Investments, Defendant OAS Infrastructure is not an obligor or guarantor of the Notes.   On information and belief, Defendant OAS Infrastructure has no creditors.

81.     Defendants OAS Investments and OAS Infrastructure are both controlled by Defendant OAS.  Prior to the merger of Defendants OAS and OAS Investments (described below), Defendant OAS wholly owned Defendant OAS Investments, which in turn wholly owned Defendant OAS Infrastructure.  Following the merger of Defendants OAS and OAS Investments (which occurred on the same day as the Invepar Share Transfer), Defendant OAS Infrastructure became a direct, wholly-owned subsidiary of Defendant OAS.

22

82.     On information and belief, Defendant OAS Investments received no or grossly inadequate consideration in return for the Invepar Share Transfer.  Defendant OAS Infrastructure did not provide any consideration to Defendant OAS Investments in return for the transfer.  Nor did Defendant OAS Investments receive fair consideration by virtue of the increase in capital value of Defendant OAS Infrastructure resulting from its receipt of the Invepar Shares.  The Invepar Shares are highly liquid assets in light of the facts that (1) Invepar publishes its own financial statements; (2) Invepar's other outstanding shares are owned by other corporations (thus creating a market for the Invepar Shares); and (3) the Invepar Shares are readily marketable.  In contrast, the shares of Defendant OAS Infrastructure are illiquid, because (among other reasons) Defendant OAS Infrastructure has only a single shareholder (which was Defendant OAS Investments before the merger, and is now Defendant OAS after the merger), does not publish its own financial statements, and has no operations.

83.     The Invepar Share Transfer leaves the creditors of Defendant OAS Investments, including Plaintiff, worse off because they now no longer have direct claims on the highly liquid Invepar Shares but instead have direct claims only on an illiquid asset (the capital share of Defendant OAS Infrastructure).  This harm will only be compounded because, on information and belief, Defendant OAS Infrastructure intends to use the Invepar Shares as collateral for a new loan.  Were such new debt to be incurred (if it has not been incurred already), creditors of Defendant OAS Investments, including Plaintiff, would be further injured because they would likely be able to recover from the Invepar Shares only after any new creditors of Defendant OAS Infrastructure were made whole.

84.     The Invepar Share Transfer was approved by Fabio Hori Yonamine, as president of Defendant OAS Infrastructure, and Renato Tavares Fermiano, as secretary of Defendant OAS Infrastructure and general counsel of Defendant OAS Investments.

85.     Although Defendants OAS Investments and OAS Infrastructure approved the Invepar Share Transfer on December 26, 2014, none of the Defendants disclosed the transfer to the Noteholders (including Plaintiff).  The first public disclosure of the Invepar Share Transfer was by Invepar, not Defendants, in a release dated January 7, 2015, which was after OAS Finance and the Defendant Guarantors failed to make the required January 2, 2015, interest payment on the 2021 Notes.  On January 31, 2015, Defendant OAS Infrastructure disclosed what appears to be the Invepar Share Transfer by publishing its December 26, 2014, meeting minutes, but those minutes referred only to the transfer of "net assets" from Defendant OAS Investments to Defendant OAS Infrastructure, without specifying that such assets constituted the highly-valuable Invepar Shares.  Neither Defendant OAS Investments nor Defendant OAS (into which OAS Investments has been merged, as discussed below) has independently disclosed the Invepar Share Transfer, nor provided any explanation, let alone justification, for failing to do so.

86.     On January 30, 2015, Reuters reported that a Brazilian state court seized certain Invepar shares owned by Defendant OAS Infrastructure (representing 8.9% of Invepar's total outstanding shares), upon the request of the trustee for the holders of the 10th Series Non-Convertible Debentures issued by Defendant OAS and guaranteed by Defendant OAS Construction.  The trustee had alleged that Defendant OAS Investments unlawfully transferred the Invepar Shares to Defendant OAS Infrastructure to put them beyond the reach of existing creditors.

24

87.     Although Defendant OAS Infrastructure now nominally owns the Invepar Shares, Defendant OAS Infrastructure is a mere department and alter ego of Defendant OAS Investments, and any distinctions between the two corporations should be disregarded.

88.     On information and belief, Defendant OAS Investments exercised complete domination over Defendant OAS Infrastructure with respect to the Invepar Share Transfer, as shown by the following facts and additional facts that Plaintiff expects to obtain through discovery:

    a.    At the time of the Invepar Share Transfer, Defendant OAS Infrastructure was a wholly-owned subsidiary of Defendant OAS Investments, which in turn was a wholly-owned subsidiary of Defendant OAS.  Following the merger of Defendants OAS and OAS Investments, Defendant OAS Infrastructure now is a wholly-owned subsidiary of Defendant OAS.

    b.    Defendants OAS Infrastructure and OAS share the same office address.

    c.    Defendant OAS Infrastructure does not publish its own financial statements.

    d.    At the time of the Invepar Share Transfer, Defendant OAS Infrastructure was a shell corporation with no operations and only R $1,000 in capital stock.

    e.    There is broad overlap among the directors and officers of Defendants OAS Investments and OAS Infrastructure.  For example, both corporations have the same President (Fabio Hori Yonamine) and Secretary (Renato Fermiano Tavares).

    f.    The minutes for Defendant OAS Infrastructure's December 26, 2014, meeting (at which Defendant Infrastructure issued 727,643,955 shares of capital stock to Defendant OAS Investments in return for the Invepar Share Transfer) are signed by Renato Fermiano Tavares both in his capacity as General Counsel of Defendant OAS Investments and Secretary of Defendant OAS Infrastructure.

    g.    In a jointly signed statement dated December 26, 2014, which was not publicly disclosed by Invepar until January 7, 2015, Defendants OAS Investments and OAS Infrastructure stated that the transfer "does not result in a change of control of Invepar, since [Defendant OAS Infrastructure] is a wholly owned subsidiary of [Defendant OAS Investments], which in turn was already shareholder of Invepar and participated in its control block," showing that Defendant OAS Infrastructure exercises no discretion over the control of the Invepar Shares.

89.     Defendant OAS Investments used its domination over Defendant OAS Infrastructure to orchestrate the Invepar Share Transfer with the actual intent to hinder, delay, and defraud the Noteholders, including Plaintiff, by transferring the Invepar Shares to an entity (Defendant OAS Infrastructure) that is not liable on the Notes, to prevent the Noteholders from reaching those assets.

90.     Following the merger of Defendants OAS and OAS Investments (described below), Defendant OAS Infrastructure now is a direct, wholly-owned subsidiary of Defendant OAS.  Defendant OAS Infrastructure is a mere department and alter ego of Defendant OAS for the same reasons as alleged above.

### 3.      The Fraudulent Merger Of Defendants OAS And OAS Investments

91.     After Defendant OAS Investments was stripped of the Invepar Shares, Defendants proceeded to the next phase of their fraudulent scheme: Destroying the Noteholder's structural seniority over the assets of Defendant OAS Investments by effectively nullifying the OAS Investments Guarantee.

92.     On December 26, 2014, the same day that Defendant OAS Investments fraudulently transferred the Invepar Shares, it merged into Defendant OAS (the "Merger").  The Merger was approved by Defendant OAS (as sole shareholder of Defendant OAS Investments) and by the shareholders of Defendant OAS.

93.     The same two individuals—Josedir Barreto dos Santos and Renato Tavares Fermiano—approved the Merger on behalf of both Defendant OAS and Defendant OAS Investments.  Renato Travers Fermiano also approved the Merger on behalf of Defendant OAS's shareholder, LP Participações e Engenharia Ltda.  Cesar de Araujo Mata Pires approved the Merger on behalf of Defendant OAS's other shareholder, CMP Holdings Ltd.

94.     Pursuant to the terms of the Merger, Defendant OAS Investments transferred all of its property, assets, rights, and obligations to Defendant OAS.  Defendant OAS Investments ceased to maintain a separate legal identity.  Thus, as a result of the Merger, Defendant OAS Investments no longer exists.

95.     The Merger is (and was intended to be) enormously prejudicial to the Noteholders, including Plaintiff, because it has effectively nullified the OAS Investments Guarantee.  Prior to the Merger, Defendant OAS Investments was liable to the Noteholders, including Plaintiff, by virtue of the OAS Investments Guarantee.  Importantly, however, Defendant OAS Investments was *not* liable to the vast majority of the creditors of Defendant OAS, because those creditors' claims against Defendant OAS were not guaranteed by Defendant OAS Investments.

96.     As a result, the Noteholders were structurally senior to the vast majority of creditors of Defendant OAS.  That is, in the event of a default on the Notes (as has now occurred on the Notes), the Noteholders could seek to recover directly from the assets of Defendant OAS Investments by virtue of the OAS Investments Guarantee.  In contrast, in the event of a default by Defendant OAS on its obligations, the vast majority of creditors of Defendant OAS could *not* seek to recover directly from the assets of Defendant OAS Investments, but instead could seek to recover only indirectly through Defendant OAS's equity ownership of Defendant OAS Investments.  In practical terms, this meant that the vast majority of creditors of Defendant OAS could not recover from the assets of Defendant OAS Investments until the Noteholders (including Plaintiff) were paid in full from those assets.

97.     By merging together the assets of Defendants OAS and OAS Investments, however, the Merger has effectively nullified the OAS Investments Guarantee.  Now, there is no

longer any distinction between the assets of Defendant OAS Investments and Defendant OAS. As a result, *all* of the creditors of Defendant OAS may seek to recover directly from the assets of Defendant OAS Investments that were transferred in the Merger, even though the vast majority of those creditors do not hold claims that are guaranteed by Defendant OAS Investments.  The Merger has thus caused Defendant OAS Investments to incur *all* of the liability of Defendant OAS.  Put simply, the Merger has placed the Noteholders and Defendant OAS's creditors into a single group, with ostensibly equal claims to the assets of Defendant OAS Investments.  It is as if Defendant OAS Investments had never guaranteed the Notes at all.

98.     As a result of the Merger, the Noteholders (including Plaintiff) will recover far less of the amounts owed to them under the Notes than if the Merger had not occurred.  The combined assets of Defendants OAS and OAS Investments are not nearly enough to satisfy the claims of all of their creditors, including the Noteholders. While, before the Merger, the Noteholders had to share the assets of Defendant OAS with Defendant OAS's other creditors, the Noteholders had senior rights to the assets of Defendant OAS Investments. Now, after the Merger, the Noteholders still must share the assets of Defendant OAS with its other creditors, but the Noteholders must also share the assets of Defendant OAS Investments that were transferred in the Merger. Because the combined assets of Defendants OAS and OAS Investments are not enough to pay all of their creditors (including the Noteholders), and because the Merger has reduced the proportionate share of the Noteholders' claims to those assets, the Merger will significantly reduce the amount of money the Noteholders (including Plaintiff) can recover on the Notes.

99.     Moreover, because Defendant OAS already is a guarantor of the Notes, the Merger does not provide any benefit to the Noteholders that they did not already have prior to the Merger.

100.    On information and belief, none of Defendant OAS Investments' directors or officers, nor its sole shareholder Defendant OAS, considered whether the Merger furthered the interests of the Noteholders, including Plaintiff.   Instead, as stated in the Protocol and Justification for the Merger issued by Defendant OAS Investments, the purported justification for the Merger was to "maximize performance and enhance synergies" in order to "serve the interests of the Parties and [their] shareholders."  The Protocol and Justification for the Merger does not provide any explanation for how the Merger would achieve this purported benefit, other than to assert vaguely that the Merger will produce "administrative and economic order, allowing greater exploitation of the resources of the companies involved, through operational and administrative rationalization, with increased synergies and results."

101.    In reality, on information and belief, the Merger conferred none of the benefits described above, nor did Defendants OAS or OAS Investments intend it to do so or believe that it would do so.   Instead, the actual purpose of Defendants OAS and OAS Investments in approving the Merger was to hinder, delay, and defraud the Noteholders, including Plaintiff, by effectively stripping them of the OAS Investments Guarantee, in order to impede them from recovering from the assets of Defendant OAS Investments that were transferred to Defendant OAS in the Merger.

102.    The fraudulent nature of the Merger is highlighted by the circumstances in which Defendants OAS and OAS Investments consummated it.   As with the OAS Construction Asset Transfer and the Invepar Share Transfer, the Merger was orchestrated in secrecy among the

parties.   Although the Merger was approved by the shareholders of Defendant OAS and Defendant OAS Investments on December 26, 2014, none of the Defendants disclosed the Merger to the Noteholders (including Plaintiff) until January 29, 2015, after OAS Finance and the Defendant Guarantors failed to make the required January 2, 2015, interest payment on the 2021 Notes (as well as after these same Defendants each defaulted on an interest payment on another series of notes, the 8.875% Perpetual Notes issued by OAS Finance).   None of the Defendants has provided any explanation, let alone justification, for the month-long delay in disclosing the Merger.

103.   In addition, the minutes from the December 26, 2014, meetings at which Defendants OAS and OAS Investments each approved the Merger state that a valuation report was requested as a condition of consummating the merger.   Yet the meeting minutes show that 2PAR produced a single valuation report that was relied on by both Defendants OAS and OAS Investments, thus creating an obvious conflict of interest.   2PAR is the same company on whose report both Defendants OAS Construction and OAS Engineering and Construction relied in connection with the OAS Construction Asset Transfer.

104.   The fraudulent Merger has severely compromised Plaintiff's ability to recover the payments owed to it under the Notes.

## COUNT 1
**(Against OAS, OAS Construction, and OAS Engineering and Construction for the OAS Construction Asset Transfer)**
**(Actual Fraudulent Conveyance Under N.Y. Debt. & Cred. Law § 276)**

105.   Plaintiff repeats and realleges paragraphs 1-104, above.

106.   As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors.   The Notes were issued prior to the fraudulent

transfers alleged in this complaint.   Plaintiff's claims with respect to the 2021 Notes have matured.

107.    Through the OAS Construction Asset Transfer, Defendant OAS Construction transferred the OAS Construction Assets to Defendant OAS Engineering and Construction, a wholly-owned subsidiary of Defendant OAS.   Unlike Defendant OAS Construction, Defendant OAS Engineering and Construction is not an obligor or guarantor of the Notes.   The OAS Construction Assets had a value of at least R $301,104,684, but Defendant OAS Construction did not receive any consideration in return for transferring those assets.

108.    Defendants OAS Construction, OAS Engineering and Construction, and OAS agreed to, approved, and orchestrated the OAS Construction Asset Transfer with the actual intent to hinder, delay, and/or defraud the present and future creditors of Defendant OAS Construction, including in particular the Noteholders, from reaching the OAS Construction Assets, which intent and belief is shown by, among other things, that:

a.    Unlike Defendant OAS Construction, Defendant OAS Engineering and Construction is not an obligor or guarantor of the Notes;

b.    Defendant OAS Construction received no consideration in return for the OAS Construction Asset Transfer;

c.    Defendant OAS Engineering and Construction is wholly-owned by Defendant OAS, which also directly owns over 99% of OAS Construction and indirectly owns the remaining less than 1% of OAS Construction;

d.    Defendant OAS Engineering and Construction is a mere department of and alter ego of Defendant OAS;

e.    at the time of the OAS Construction Asset Transfer, Defendant OAS Construction was insolvent and/or was thereby rendered insolvent, was left with  unreasonably small capital, and, on information and belief, did not believe that it would be able to pay its debts as they matured;

f.   the OAS Construction Asset Transfer was not made in good faith by Defendant OAS Construction, nor was it received in good faith by Defendants OAS Engineering and Construction or OAS;

g.   Defendant OAS Construction was aware that the Noteholders held claims against it by virtue of its irrevocable and unconditional guarantee of the Notes;

h.   although the OAS Construction Asset Transfer was consummated on December 1, 2014, Defendants OAS Construction and OAS Engineering and Construction did not publicly disclose the transfer to the Noteholders.  The OAS Construction Asset Transfer was not publicly disclosed until Defendants OAS Construction and OAS Engineering and Construction published their December 1, 2014 meeting minutes on January 20, 2015, after OAS Finance and the Defendant Guarantors failed to make the required January 2, 2015, interest payment on the 2021 Notes;

i.   none of Defendants has provided any explanation or justification for the delay in disclosing the OAS Construction Asset Transfer to the Noteholders;

j.   the OAS Construction Asset Transfer was not a transaction conducted in the ordinary course of business; and

k.   the OAS Construction Asset Transfer is one step in a series of fraudulent transfers, described in this Complaint, that Defendants have engaged in to prevent the Noteholders from reaching the assets of the Subsidiary Guarantors.

109.   Defendant OAS is the sole shareholder of, and controls, Defendant OAS Engineering and Construction.

110.   Defendant OAS controls Defendant OAS Construction.  Defendant OAS owns more than 99% of the shares issued by Defendant OAS Construction.  The remaining shares issued by Defendant OAS Construction are owned by non-party OAS Engenharia S.A., which is a wholly-owned subsidiary of Defendant OAS.

111.   Defendant OAS exercised complete domination over Defendant OAS Engineering and Construction with respect to the OAS Construction Asset Transfer.  Defendant OAS used its control over Defendants OAS Construction and OAS Engineering and Construction to fraudulently orchestrate the transfer of assets from Defendant OAS Construction in order to render Defendant OAS Construction unable to meet its obligations to the Noteholders.

Accordingly, Defendant OAS Engineering and Construction is a department of and alter ego of Defendant OAS.

112.   Defendant OAS participated in the OAS Construction Asset Transfer through its control over Defendants OAS Construction and OAS Engineering and Construction.  Defendant OAS was a beneficiary of the OAS Construction Asset Transfer.

113.   Plaintiff has been harmed by the OAS Construction Asset Transfer.

114.   The OAS Construction Asset Transfer should be avoided and set aside and the OAS Construction Assets or their value should be recovered pursuant to N.Y. Debt. & Cred. Law §§ 276, 278, and 279.

**COUNT 2**
**(Against OAS, OAS Construction, and OAS Engineering and Construction**
**for the OAS Construction Asset Transfer)**
**(Constructive Fraudulent Conveyance Under N.Y. Debt. & Cred. Law §§ 273, 274, 275)**

115.   Plaintiff repeats and realleges paragraphs 1-114, above.

116.   As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors.  The Notes were issued prior to the fraudulent transfers alleged in this complaint.  Plaintiff's claims with respect to the 2021 Notes have matured.

117.   Through the OAS Construction Asset Transfer, Defendant OAS Construction transferred the OAS Construction Assets to Defendant OAS Engineering and Construction, a wholly-owned subsidiary of Defendant OAS.  Unlike Defendant OAS Construction, Defendant OAS Engineering and Construction is not an obligor or guarantor of the Notes.  The OAS Construction Assets had a value of at least R $301,104,684, but Defendant OAS Construction did not receive any consideration in return for transferring those assets.

118.    Defendant OAS Construction did not receive fair consideration in connection with the OAS Construction Asset Transfer.

119.    The OAS Construction Asset Transfer was not made in good faith by Defendant OAS Construction, nor was it received in good faith by Defendants OAS or OAS Engineering and Construction.

120.    The OAS Construction Asset Transfer was made by Defendant OAS Construction when Defendant OAS Construction was insolvent, and it rendered Defendant OAS Construction further insolvent, as the present fair salable value of Defendant OAS Construction's assets before and after the OAS Construction Asset Transfer was less than the amount that would be required to pay Defendant OAS Construction's probable liability on its existing debts as they became absolute and matured.

121.    As a result of the OAS Construction Asset Transfer, Defendant OAS Construction was left with an unreasonably small capital.

122.    At the time of the OAS Construction Asset Transfer, Defendant OAS Construction believed that it would incur liabilities and debts, including to the Noteholders, beyond its ability to pay as those liabilities and debts matured.

123.    Defendant OAS is the sole shareholder of, and controls, Defendant OAS Engineering and Construction.

124.    Defendant OAS controls Defendant OAS Construction.  Defendant OAS owns more than 99% of the shares issued by Defendant OAS Construction.  The remaining shares issued by Defendant OAS Construction are owned by non-party OAS Engenharia S.A., which is a wholly-owned subsidiary of Defendant OAS.

125.    Defendant OAS exercised complete domination over Defendant OAS Engineering and Construction with respect to the OAS Construction Asset Transfer.  Defendant OAS used its control over Defendants OAS Construction and OAS Engineering and Construction to fraudulently orchestrate the transfer of assets from Defendant OAS Construction in order to render Defendant OAS Construction unable to meet its obligations to the Noteholders. Accordingly, Defendant OAS Engineering and Construction is a department of and alter ego of Defendant OAS.

126.    Defendant OAS participated in the OAS Construction Asset Transfer through its control over Defendants OAS Construction and OAS Engineering and Construction.  Defendant OAS was a beneficiary of the OAS Construction Asset Transfer.

127.    The OAS Construction Asset Transfer should be avoided and set aside and the OAS Construction Assets or their value should be recovered pursuant to N.Y. Debt. & Cred. Law §§ 273, 274, 275, 278, and 279.

## COUNT 3
**(Against OAS, OAS Investments, and OAS Infrastructure for the Invepar Share Transfer)**
**(Actual Fraudulent Conveyance Under N.Y. Debt. & Cred. Law § 276)**

128.    Plaintiff repeats and realleges paragraphs 1-127, above.

129.    As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors.  The Notes were issued prior to the fraudulent transfers alleged in this complaint.  Plaintiff's claims with respect to the 2021 Notes have matured.

130.    Through the Invepar Share Transfer, Defendant OAS Investments transferred the Invepar Shares to its wholly-owned subsidiary, Defendant OAS Infrastructure.  Unlike Defendant OAS Investments, Defendant OAS Infrastructure is not an obligor or guarantor of the

Notes. The Invepar Shares were a liquid asset worth upwards of R $3 billion. Defendant OAS Investments received no or grossly inadequate consideration in return for the Invepar Share Transfer.

131. Defendants OAS Investments and OAS Infrastructure agreed to, approved, and orchestrated the Invepar Share Transfer with the actual intent to hinder, delay, and/or defraud the present and future creditors of Defendants OAS Investments, including in particular the Noteholders, from reaching the Invepar Shares, which intent and belief is shown by, among other things, that:

a.     Unlike Defendant OAS Investments, Defendant OAS Infrastructure is not an obligor or guarantor of the Notes;

b.     Defendant OAS Investments received no or grossly inadequate consideration in return for making the Invepar Share Transfer;

c.     Defendant OAS Infrastructure was a wholly-owned subsidiary of Defendant OAS Investments and was a mere department of and alter ego of Defendant OAS Investments;

d.     following the merger of Defendants OAS and OAS Investments, Defendant OAS Infrastructure now is a direct, wholly-owned subsidiary of Defendant OAS and is a mere department and alter ego of Defendant OAS;

e.     the January 7, 2015, notice by Invepar announcing the Invepar Share Transfer included a signed statement from Defendants OAS Investments and OAS Infrastructure acknowledging that the Invepar Share Transfer "does not result in a change of control of Invepar, since [Defendant OAS Infrastructure] is a wholly owned subsidiary of [Defendant OAS Investments], which in turn was already shareholder of Invepar and participated in its control block. In addition, [Defendant OAS Investments] and [Defendant OAS Infrastructure] are part of the same group and are indirectly controlled by the same ultimate controller";

f.     at the time of the Invepar Share Transfer, Defendant OAS Investments was insolvent and/or was thereby rendered insolvent, was left with unreasonably small capital, and, on information and belief, did not believe that it would be able to pay its debts as they matured;

g.     the Invepar Share Transfer was not made in good faith by Defendant OAS Investments, nor was it received in good faith by Defendant OAS Infrastructure;

h.     Defendant OAS Investments was aware that the Noteholders held claims against it by virtue of its guarantee of the Notes;

i.     Defendant OAS Investments did not disclose the Invepar Share Transfer;

j.     although Defendant OAS Infrastructure disclosed what appears to be the Invepar Share Transfer by publishing (on January 31, 2015) its December 26, 2014, meeting minutes, those minutes referred only to the transfer of "net assets" from Defendant OAS Investments to Defendant OAS Infrastructure, without specifying that such assets constituted the highly-valuable Invepar Shares;

k.     none of the Defendants has provided any explanation or justification for the delay and/or failure in disclosing the Invepar Share Transfer to the Noteholders;

l.     the Invepar Share Transfer was not a transaction conducted in the ordinary course of business;

m.     the same day the Invepar Share Transfer was completed, Defendants OAS and OAS Investments agreed to, approved, and orchestrated the Merger with the actual intent to hinder, delay, and/or defraud the Noteholders; and

n.     the Invepar Share Transfer is one step in a series of fraudulent transfers, described in this Complaint, that Defendants have engaged in to prevent the Noteholders from reaching the assets of the Subsidiary Guarantors.

132.    Defendant OAS controls both of Defendants OAS Investments and OAS Infrastructure.

133.    Defendant OAS Investments exercised complete domination over Defendant OAS Infrastructure with respect to the Invepar Share Transfer.  Defendant OAS Investments used its control over Defendant OAS Infrastructure to fraudulently transfer assets from Defendant OAS Investments in order to render OAS Investments unable to meet its obligations to the Noteholders.  Accordingly, Defendant OAS Infrastructure is a mere department of and alter ego of Defendant OAS Investments.

134.     Following the merger of Defendants OAS and OAS Investments, Defendant OAS Infrastructure now is a direct, wholly-owned subsidiary of Defendant OAS and is a mere department and alter ego of Defendant OAS.

135.     Plaintiff has been harmed by the Invepar Share Transfer.

136.     The Invepar Share Transfer should be avoided and set aside and the Invepar Shares or their value should be recovered pursuant to N.Y. Debt. & Cred. Law §§ 276, 278, and 279.

**COUNT 4**
**(Against OAS, OAS Investments, and OAS Infrastructure for the Invepar Share Transfer)**
**(Constructive Fraudulent Conveyance Under N.Y. Debt. & Cred. Law §§ 273, 274, 275)**

137.     Plaintiff repeats and realleges paragraphs 1-136, above.

138.     As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors. The Notes were issued prior to the fraudulent transfers alleged in this complaint.   Plaintiff's claims with respect to the 2021 Notes have matured.

139.     Through the Invepar Share Transfer, Defendant OAS Investments transferred the Invepar Shares to its wholly-owned subsidiary, Defendant OAS Infrastructure.    Unlike Defendant OAS Investments, Defendant OAS Infrastructure is not an obligor or guarantor of the Notes.   The Invepar Shares were a liquid asset worth upwards of R $3 billion.   Defendant OAS Investments received no or grossly inadequate consideration in return for the Invepar Share Transfer.

140.     Defendant OAS Investments did not receive fair consideration in connection with the Invepar Share Transfer.

141.    The Invepar Share Transfer was not made in good faith by Defendant OAS Investments, nor was it received in good faith by Defendant OAS Infrastructure.

142.    At the time of the Invepar Share Transfer, Defendant OAS Investments was insolvent and/or was thereby rendered insolvent, as the present fair salable value of Defendant OAS Investments' assets before and after the Invepar Share Transfer was less than the amount that would be required to pay Defendant OAS Investments' probable liability on its existing debts as they became absolute and matured.

143.    Before and after the Invepar Share Transfer, Defendant OAS Investments had an unreasonably small capital.

144.    At the time of the Invepar Share Transfer, Defendant OAS Investments believed that it would incur liabilities and debts, including to the Noteholders, beyond its ability to pay as those liabilities and debts matured.

145.    Defendant OAS controls both of Defendants OAS Investments and OAS Infrastructure.

146.    Defendant OAS Investments exercised complete domination over Defendant OAS Infrastructure with respect to the Invepar Share Transfer.  Defendant OAS Investments used its control over Defendant OAS Infrastructure to fraudulently transfer assets from Defendant OAS Investments in order to render Defendant OAS Investments unable to meet its obligations to the Noteholders.  Accordingly, Defendant OAS Infrastructure is a mere department of and alter ego of Defendant OAS Investments.

147.    Following the merger of Defendants OAS and OAS Investments, Defendant OAS Infrastructure now is a direct, wholly-owned subsidiary of Defendant OAS and is a mere department and alter ego of Defendant OAS.

148.     The Invepar Share Transfer should be avoided and set aside and the Invepar Shares or their value should be recovered pursuant to N.Y. Debt. & Cred. Law §§ 273, 274, 275, 278, and 279.

**COUNT 5**
**(Against OAS and OAS Investments for the Merger)**
**(Actual Fraudulent Conveyance Under New York Debtor and Creditor Law § 276)**

149.     Plaintiff repeats and realleges paragraphs 1-148, above.

150.     As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors.  The Notes were issued prior to the fraudulent transfers alleged in this complaint.   Plaintiff's claims with respect to the 2021 Notes have matured.

151.     Prior to the Merger, Defendant OAS Investments was liable to the Noteholders by virtue of the OAS Investments Guarantee.  Defendant OAS Investments was not, however, liable to the vast majority of other creditors of Defendant OAS.  Accordingly, the vast majority of other creditors of Defendant OAS did not have any claims against the assets of Defendant OAS Investments, except (at most) indirectly through their claims against Defendant OAS.  The OAS Investments Guarantee thus made the Noteholders structurally senior to the vast majority of creditors of Defendant OAS with respect to the assets of Defendant OAS Investments.

152.     Through the Merger, Defendant OAS assumed all of the assets and liabilities of Defendant OAS Investments, and Defendant OAS Investments ceased to exist.  As a result of the Merger, creditors of Defendant OAS now may assert claims against the assets of Defendant OAS Investments that were transferred to Defendant OAS through the Merger.  The Merger has thus nullified the OAS Investments Guarantee and the accompanying structural seniority of the Noteholders with respect to the assets of Defendant OAS Investments.

153.    Defendants OAS and OAS Investments agreed to, approved, and orchestrated the
Merger with the actual intent to hinder, delay, and/or defraud the present and future creditors of
Defendant OAS Investments, including in particular the Noteholders, from reaching the assets of
Defendant OAS Investments that were transferred to Defendant OAS, which intent and belief is
shown by, among other things, that:

a.    the Merger effectively caused Defendant OAS Investments to incur all of the
obligations of Defendant OAS, but provided Defendant OAS Investments no or
grossly inadequate consideration in return;

b.    Defendant OAS Investments was a wholly-owned subsidiary of Defendant OAS
at the time of the Merger;

c.    at the time of the Merger, Defendant OAS Investments was insolvent and/or was
thereby rendered insolvent, was left with unreasonably small capital, and, on
information and belief, did not believe that it would be able to pay its debts as
they matured;

d.    Defendants OAS and OAS Investments did not act in good faith in agreeing to,
approving, and orchestrating the Merger;

e.    Defendants OAS and OAS Investments were aware that the Noteholders held
claims against Defendant OAS Investments by virtue of the OAS Investments
Guarantee;

f.    even though the Merger was consummated on December 26, 2014, Defendants
OAS and OAS Investments did not disclose the transfer to the Noteholders until
January 29, 2015, after OAS Finance and the Defendant Guarantors failed to
make the required January 2, 2015, interest payment on the 2021 Notes;

g.    none of the Defendants has provided any explanation or justification for the delay
in disclosing the Merger to the Noteholders;

h.    the Merger was not a transaction conducted in the ordinary course of business;

i.    the same day the Merger was completed, Defendant OAS Investments transferred
the Invepar Shares to Defendant OAS Infrastructure for no or grossly inadequate
consideration with the actual intent to hinder, delay, and/or defraud the
Noteholders; and

j.   the Merger is one step in a series of fraudulent transfers, described in this Complaint, that Defendants have engaged in to prevent the Noteholders from reaching the assets of the Subsidiary Guarantors.

154.   Prior to the Merger, Defendant OAS was the sole shareholder of, and controlled, Defendant OAS Investments.

155.   Plaintiff has been harmed by the Merger.

156.   The Merger should be avoided and set aside and the assets of Defendant OAS Investments that were transferred to Defendant OAS in the Merger or their value should be recovered pursuant to N.Y. Debt. & Cred. Law §§ 276, 278, and 279.

**COUNT 6**
**(Against OAS and OAS Investments for the Merger)**
**(Constructive Fraudulent Conveyance Under N.Y. Debt. & Cred. Law §§ 273, 274, 275)**

157.   Plaintiff repeats and realleges paragraphs 1-156, above.

158.   As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors.  The Notes were issued prior to the fraudulent transfers alleged in this complaint.  Plaintiff's claims with respect to the 2021 Notes have matured.

159.   Prior to the Merger, Defendant OAS Investments was liable to the Noteholders by virtue of the OAS Investments Guarantee.  Defendant OAS Investments was not, however, liable to the vast majority of other creditors of Defendant OAS.  Accordingly, the vast majority of other creditors of Defendant OAS did not have any claims against the assets of Defendant OAS Investments, except (at most) indirectly through their claims against Defendant OAS.  The OAS Investments Guarantee thus made the Noteholders structurally senior to the vast majority of creditors of Defendant OAS with respect to the assets of Defendant OAS Investments.

160.    Through the Merger, Defendant OAS assumed all of the assets and liabilities of Defendant OAS Investments, and Defendant OAS Investments ceased to exist.  As a result of the Merger, creditors of Defendant OAS now may assert claims against the assets of Defendant OAS Investments that were transferred to Defendant OAS through the Merger.  The Merger has thus nullified the OAS Investments Guarantee and the accompanying structural seniority of the Noteholders with respect to the assets of Defendant OAS Investments.

161.    Defendant OAS Investments did not receive fair consideration in connection with the Merger.

162.    The Merger was not agreed to, approved, or orchestrated in good faith by Defendants OAS and OAS Investments.

163.    The Merger was agreed to, approved, and orchestrated by Defendant OAS Investments when Defendant OAS Investments was insolvent, and it rendered Defendant OAS Investments further insolvent, as the present fair salable value of Defendant OAS Investments' assets before and after the Merger was less than the amount that would be required to pay Defendant OAS Investments' probable liability on its existing debts as they became absolute and matured.

164.    As a result of the Merger, Defendant OAS Investments was left with an unreasonably small capital.

165.    At the time the Merger was agreed to, approved, and orchestrated, Defendant OAS Investments believed that it would incur liabilities and debts, including to the Noteholders, beyond its ability to pay as those liabilities and debts matured.

166.    Prior to the Merger, Defendant OAS was the sole shareholder of, and controlled, Defendant OAS Investments.

167.    The Merger should be avoided and set aside and the assets of Defendant OAS Investments that were transferred to Defendant OAS in the Merger or their value should be recovered pursuant to N.Y. Debt. & Cred. Law §§ 273, 274, 275, 278, and 279.

**COUNT 7**
**(Against OAS)**
**(Unjust Enrichment)**

168.    Plaintiff repeats and realleges paragraphs 1-167, above.

169.    As a beneficial owner of the Notes, Plaintiff is a creditor of OAS Finance, OAS GmbH, and of each of the Defendant Guarantors.

170.    Prior to the OAS Construction Asset Transfer, Invepar Share Transfer, and Merger, the Subsidiary Guarantors held assets from which the Noteholders, including Plaintiff, could recover in the event of a default on the Notes.

171.    Through the OAS Construction Asset Transfer, Invepar Share Transfer, and Merger, Defendant OAS inequitably sought to benefit itself at the expense of the Noteholders, including Plaintiff, by shifting assets from the Subsidiary Guarantors to Defendant OAS or to entities that Defendant OAS controls directly or indirectly, in order to prevent the Noteholders, including Plaintiff, from recovering those assets.

172.    As a result of the OAS Construction Asset Transfer, Invepar Share Transfer, and Merger, Defendant OAS has been unjustly enriched at Plaintiff's expense and now holds and/or controls assets that, in equity and good conscience, should be returned to the Subsidiary Guarantors.

173.    The Court should (1) set aside the OAS Construction Asset Transfer, Invepar Share Transfer, and Merger; (2) order the assets transferred in the OAS Construction Asset Transfer to be returned to Defendant OAS Construction; (3) order the assets transferred in the

Invepar Share Transfer to be returned to Defendant OAS Investments; and (4) order the assets

transferred in the Merger to be returned to Defendant OAS Investments.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

a.      Setting aside and voiding the OAS Construction Asset Transfer, Invepar Share Transfer, and Merger, or granting, in the alternative, a compensatory money judgment against Defendants in an amount to be determined at trial;

b.      Restraining Defendants from disposing of the transferred assets;

c.      Ordering that the assets transferred in the OAS Construction Asset Transfer, Invepar Share Transfer, and Merger be returned to the transferors;

d.      Awarding Plaintiff actual and prospective damages in an amount to be determined at trial;

e.      Granting preliminary and temporary injunctive relief as the Court deems appropriate;

f.      Awarding Plaintiff attorneys' fees, costs and expenses incurred in bringing this action, together with prejudgment and post-judgment interest; and

g.      Granting Plaintiff other such relief the Court deems just and proper, including pursuant to New York Debtor and Creditor Laws §§ 278-279.

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

HUXLEY CAPITAL CORPORATION

Lawrence S. Robbins
Ariel N. Lavinbuk
Mark A. Hiller (*pro hac* motion forthcoming)
Lee Turner Friedman
Robbins, Russell, Englert, Orseck,
  Untereiner & Sauber LLP
1801 K Street, N.W., Suite 411-L
Washington, D.C. 20006
Phone: (202) 775-4500
Fax: (202) 775-4510
lrobbins@robbinsrussell.com
alavinbuk@robbinsrussell.com

*Counsel for Plaintiff*

Dated: March 5, 2015