**ORAL ARGUMENT REQUESTED**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------- X

Huxley Capital Corporation,            :
          :
        Plaintiff,        :
          :
      vs.        :    Civil Action No. 15-cv-01637
          :
OAS S.A., Construtora OAS S.A., OAS Investimentos  :
S.A., OAS Infraestrutura S.A., OAS Engenhario e  :
Construcao S.A.         :
        Defendants.    :
--------------------------------------------------------------------- X


## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT[1]

---

[1]  Defendants OAS Infraestrutura S.A. and OAS Engenhario e Construcao S.A. make a limited appearance solely to contest personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  Terms not defined in this Memorandum have the meanings ascribed to them in the First Amended Complaint.

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ........................................................................1

II.    FACTUAL BACKGROUND ..........................................................................2

    A.     The Amended Complaint's Allegations..............................................2

    B.     The Brazilian Bankruptcy Proceeding ...............................................4

    C.     The U.S. Chapter 15 Proceeding.........................................................5

III.   ARGUMENT ................................................................................................5

    A.     The Action Should Be Dismissed Based On International Comity.......................5

    B.     The Action Should Be Dismissed Because Aurelius Lacks Standing ................10

    C.     The Action Should Be Dismissed With Respect To Engenhario And
        Infraestrutura Because This Court Lacks Personal Jurisdiction As To
        Them ..............................................................................................14

    D.     The Action Should Be Dismissed With Respect To Engenhario And
        Infraestrutura Because New York's Debtor-Creditor Law Cannot Be
        Applied Extraterritorially To These Entities.........................................20

    E.     The Amended Complaint Should Be Dismissed Because Engenhario And
        Infraestrutura Are Indispensable Parties That Cannot Be Joined ................21

    F.     The Complaints' Counts 1, 3, And 5, Alleging "Actual Fraudulent
        Conveyance," Must Be Dismissed For Failure To Plead With Particularity........22

        1.     The Construtora Transfer.........................................................23

        2.     The Invepar Transfer...............................................................24

        3.     The Merger.............................................................................24

IV.    CONCLUSION............................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allstate Life Ins. Co. v. Linter Group Ltd.*,
  994 F.2d 996 (2d Cir. 1993)........................................................................6, 9

*Applestein v. Province of Buenos Aires*,
  415 F.3d 242 (2d Cir. 2005)........................................................................14

*Atlanta Shipping Corp. v. Chem. Bank*,
  818 F.2d 240 (2d Cir. 1987).........................................................................23

*Begier v. IRS*,
  496 U.S. 53 (1990)........................................................................................9

*Burger King Corp. v. Rudzewicz*,
  471 U. S. 462 (1985)....................................................................................15

*Canada S. R. Co. v. Gebhard*,
  109 U.S. 527 (1883).......................................................................................9

*Capmark Fin. Group Inc. v. Goldman Sachs Credit L.P.*,
  491 B.R. 335 (S.D.N.Y. 2013)..............................................................16, 17

*Cargill Soluciones Empresariales, S.A., de C.V, SOFOM ENR v. WPHG Mexico
  Operating, L.L.C.*,
  2015 NY Slip Op 30713(U), 2015 N.Y. Misc. LEXIS 1470
  (N.Y. Sup. Ct. Apr. 24, 2015)....................................................................19

*In re Colonial Realty Co.*,
  980 F.2d 125 (2d Cir. 1992).........................................................................6

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
  Case No. 13-3325, 2015 U.S. App. LEXIS 10655 (2d Cir. Jun. 24, 2015)..................2, 13, 14

*Cortlandt St. Recovery Corp. v. Hellas Telecomms, S.r.l.*,
  996 N.Y.S.2d 476 (N.Y. Sup. Ct. 2014) ....................................................12

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014)......................................................................15, 16, 18

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011)..........................................................17

*Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*,
  375 F. Supp. 2d 257 (S.D.N.Y. 2005)..........................................................21

*Finanz AG Zurich v. Banco Economico SA*,
  192 F.3d 240 (2d Cir. 1999)......................................................................5, 8

*Fletcher v. Atex, Inc.,*
   68 F.3d 1451 (2d Cir. 1995)....................................................................16, 17

*Fontana v. Republic of Argentina,*
   415 F.3d 238 (2d Cir. 2005)...........................................................................14

*Freeman v. Complex Computing Co.,*
   119 F.3d 1044 (2d Cir. 1997)........................................................................17

*Frummer v. Hilton Hotels Int'l, Inc.,*
   19 N.Y.2d 533 (1967)....................................................................................18

*Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.,*
   18 N.Y. 3d 722 (2012)..............................................................................20, 21

*HC Schmieding Produce Co., Inc. v. Alfa Quality Produce, Inc.,*
   597 F. Supp. 2d 313 (E.D.N.Y. 2009) ..........................................................25

*In re Hellas Telecomms. (Lux.) II SCA,*
   524 B.R. 488 (Bankr. S.D.N.Y. 2005)..........................................................21

*JP Morgan Chase Bank v. Altos Hornos de Mexico,*
   412 F.3d 418 (2d Cir. 2005)...........................................................1, 5, 6, 8, 10

*Jazini v. Nissan Motor Co.,*
   148 F.3d 181 (2d Cir. 1998)......................................................................18, 19

*Licci v. Lebanese Canadian Bank,*
   739 F.3d 45 (2d Cir. 2013)............................................................................21

*In re M. Fabrikant & Sons, Inc.,*
   394 B.R. 721 (Bankr. S.D.N.Y. 2008)..........................................................22

*Manfredonia v. American Airlines, Inc.,*
   68 A.D.2d 131 (N.Y. App. Div. 1979) .........................................................20

*McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.,*
   2015 U.S. Dist. LEXIS 3347 (S.D.N.Y. Jan. 12, 2015).................................19

*Morris v. New York State Dep't of Taxation and Finance,*
   82 N.Y.2d 135 (1993) ...................................................................................16

*Morrison v. Nat'l Austl. Bank, Ltd.,*
   561 U.S. 247 (2010)......................................................................................20

*Motorola, Inc. v. Abeckaser,*
   2010 U.S. Dist. LEXIS 7405 (S.D.N.Y. Jan. 29, 2010).................................22

*Munno v. Town of Orangetown,*
   391 F. Supp. 2d 263 (S.D.N.Y. 2005).............................................................4

*In re NII Holdings, Inc.,*
   Case No. 14-12611, Dkt. No. 831 (Bankr. S.D.N.Y. Jun. 19, 2015)................8

*In re OAS S.A.*,
  Case No. 15-10937 (SMB) (Bankr. S.D.N.Y.) ........................................................4

*Oui Fin. LLC v. Dellar*,
  2013 U.S. Dist. LEXIS 146214 (S.D.N.Y. Oct. 9, 2013) ................................5, 10

*Quadrant Structured Prods. Co., Ltd. v Vertin*,
  23 N.Y.3d 549 (2014) ...........................................................................2, 10, 11

*In Re Rede Energia SA*,
  515 B.R. 69 (Bankr. S.D.N.Y. 2014) ...................................................................5, 8

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
  No. 13 CIV. 1654 RA, 2014 WL 2610608 (S.D.N.Y. June 10, 2014) ...................23

*In re Sharp Intern. Corp.*
  403 F.3d 43 (2d Cir. 2005)........................................................................25

*Societe d' Assurance de l'Est SPRL v. Citigroup, Inc.*,
  No. 10 Civ. 4754 (JGK), 2011 WL 4056306 (S.D.N.Y. Sep. 13, 2011) ...............16

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014)........................................................................18

*United States v. Bestfoods*,
  524 U.S. 51 (1998)........................................................................16

*Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*,
  751 F.2d 117 (2d Cir. 1984)........................................................................16

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)........................................................................14, 15

*Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*,
  503 B.R. 348 (Bankr. S.D.N.Y. 2014) ...............................................................25

## **Statutes**

11 U.S.C. § 304 ................................................................................................................5

11 U.S.C. § 1123(b)(3)(A) ................................................................................................8

11 U.S.C. Chapter 15 ................................................................................................1, 5, 8

Fed. R. Civ. P. 8 ...............................................................................................................25

Fed. R. Civ. P. 9(b) ..............................................................................................22, 23, 25

Fed. R. Civ. P. 12(b)(1), (2), (5), (6), and (7) ..................................................................1

Fed. R. Civ. P. 19(b) .......................................................................................................22

Brazilian Bankruptcy Law, Federal Law No. 11.101 of Feb. 9, 2005 .............................4

N.Y. D.C.L. § 276 ............................................................................................................23

Defendants OAS S.A. ("<u>OAS</u>"), Construtora OAS S.A. ("<u>Construtora</u>"), OAS Investimentos S.A. ("<u>Investimentos</u>"), OAS Infraestrutura S.A. ("<u>Infraestrutura</u>"), and OAS Engenhario e Construcao S.A. ("<u>Engenhario</u>") respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (5), (6) and (7), to dismiss the amended complaint ("<u>Amended Complaint</u>" or "<u>A/C</u>") filed by Huxley Capital Corporation (with its affiliates, "<u>Aurelius</u>").

## I.    PRELIMINARY STATEMENT

OAS and its subsidiaries are debtors in an active, plenary bankruptcy proceeding in Brazilian court, which has been recognized under Chapter 15 of the Bankruptcy Code by the U.S. Bankruptcy Court for the Southern District of New York.  On June 19, 2015, OAS and the other debtors filed a plan of reorganization.  Negotiations in the Brazilian bankruptcy (including with Aurelius) are ongoing to restructure OAS' debt and to resolve all claims asserted in this action (which concern putative transfers of Brazil-located assets between Brazilian companies).  Ultimately, the Brazilian court will decide, in view of the creditors' vote, whether the plan is fair to *all* creditors.  Under the well-settled doctrine of international comity, *see, e.g., JP Morgan Chase Bank v. Altos Hornos de Mexico*, 412 F.3d 418, 424, 427 (2d Cir. 2005), this Court should defer to the centralized Brazilian proceeding and dismiss this action, which seeks to put the interests of a single creditor (Aurelius) above those of other creditors looking to the same assets, and creates a risk of inconsistent judgments.  Although this Court can and should dismiss this case based upon comity alone, dismissal is also warranted on additional, independent grounds:

*First*, the Amended Complaint is barred by the Notes' "no action" clauses, which prohibit Aurelius from pursuing any claim relating to the "securities" (*i.e.*, the Notes) unless expressly authorized by the Indentures.  There is no such authorization.  The New York Court of Appeals has held that no action clauses of this breadth bar the assertion of fraudulent conveyance claims by self-serving individual noteholders such as Aurelius, instead leaving the decision whether to

bring suit to the indenture trustees, who represent *all* noteholders and who have *not* sued in any court.  *Quadrant Structured Prods. Co., Ltd. v Vertin*, 23 N.Y.3d 549 (2014).

*Second*, even if the no-action clauses did not bar Aurelius, this action still must be dismissed on Article III standing grounds.  Notwithstanding Aurelius' claims to have more than quadrupled its "beneficial" holdings since commencing this action (while at the same time alleging continuing "fraud" upon creditors), Aurelius fails to properly allege that it has been assigned record ownership of the claims it has asserted.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, Case No. 13-3325, 2015 U.S. App. LEXIS 10655, at *11-13 (2d Cir. Jun. 24, 2015) (affirming dismissal of fraudulent conveyance claim where plaintiff alleged it was assigned mere beneficial interests and "authority" to bring suit, not "*ownership* of the claims").

*Third*, personal jurisdiction is absent over Engenhario and Infraestrutura, recipients of two of the three asset transfers challenged by Aurelius.  They have conducted no business in the U.S., were not parties to the Indentures, and have no New York agent for service.

*Fourth*, New York's fraudulent conveyance law does not apply extraterritorially to transfers to Engenhario and Infraestrutura, which engaged in no activities in the U.S. and are not parties to the Indentures that contain a New York choice-of-law provision.

*Fifth*, because Engenhario and Infraestrutura are indispensable parties, this action should be dismissed as to all Defendants pursuant to Rule 19 of the Federal Rules of Civil Procedure.

*Sixth*, at a minimum, Aurelius' counts sounding in "actual fraud" must be dismissed for a failure to plead the requisite fraudulent intent with particularity.

## II.    FACTUAL BACKGROUND

### A.    The Amended Complaint's Allegations

Aurelius formed Huxley in February, 2015.  By the time it filed the Complaint on March 5, Aurelius had acquired "beneficial interests" in $30 million of Notes.  A/C ¶ 33.  Since that

time, Aurelius has voluntarily acquired beneficial interests in $111 million of additional Notes. A/C ¶ 33.  Aurelius thus has quadrupled its position while alleging that its rights are being "vitiated" in the Brazilian Reorganization Proceedings in "violation" of Brazilian law, and that Aurelius' ability to "obtain any recovery" is being "permanently impair[ed]."  A/C ¶¶ 65, 96.

Aurelius alleges that a "series of related transactions undertaken in December 2014" in Brazil were designed to place "valuable assets beyond the reach of Noteholders, including Plaintiff."  A/C ¶ 7. All of the alleged transactions were entirely foreign and had no contact with the U.S.:  *First*, Construtora—a Brazilian guarantor of the Notes—transferred $117 million of Brazilian assets to Engenhario, on December 1, 2014 (the "Construtora Transfer").  A/C ¶ 8. *Second*, Investimentos—also a Brazilian guarantor of the Notes—transferred "its most valuable asset," a minority interest in a Brazilian company called Invepar, to Investimentos' Brazilian, wholly-owned subsidiary, Infraestrutura, on December 26, 2014 (the "Invepar Transfer").  A/C ¶ 9.  *Third*, Investimentos was proposed to be merged into the Brazilian holding company, OAS (the "Merger," and collectively, the "Transfers"), A/C ¶ 10, although the Merger has been stayed by Aurelius' own legal actions in Brazil, which actions Aurelius fails to disclose.

Because neither Engenhario nor Infraestrutura guaranteed the Notes, Aurelius alleges that the Transfers will diminish its ability to recover from guarantors Construtora and Investimentos. A/C ¶ 12.  Aurelius does not allege that any of the Brazilian Transfers or the transferred assets will inure to the benefit of any insiders of OAS, or that they were designed to do so.  Rather, Aurelius alleges that the Brazilian Transfers "elevated" the status of certain creditors of OAS "to an equal footing with the Noteholders."  *Id.*  Aurelius seeks an order granting a "compensatory money judgment," "awarding" Aurelius damages, "setting aside and voiding" the Transfers, or directing that the transferred assets "be returned to the transferors."  A/C Prayer for Relief.

### B.   The Brazilian Bankruptcy Proceeding

On March 31, 2015, each of the Defendants other than Engenhario (the "Debtors") filed voluntary bankruptcy petitions before the First Specialized Bankruptcy Court of São Paulo (the "Brazilian Bankruptcy Court") pursuant to Federal Law No. 11.101 of February 9, 2005 (the "Brazilian Bankruptcy Law"), commencing judicial recovery proceedings, Brazil's analogue to our chapter 11 (the "Brazilian Bankruptcy Proceedings").[2]   On April 1, 2015, the Brazilian Bankruptcy Court issued a decision and order (the "Brazilian Bankruptcy Court Order") approving the continuation of the Brazilian Bankruptcy Proceedings.

The Brazilian Bankruptcy Court Order provides for the "**suspension of all actions or collection proceedings that have been brought against the debtor companies**."   Finestone Decl. Ex. A p. 3330 (emphasis in original).   The Debtors have been engaging with their major financial creditors, seeking to find solutions mutually beneficial to the Debtors, their employees, *all* creditors, and other stakeholders.   Tavares Dec. ¶ 27.

Pursuant to the Brazilian Bankruptcy Court Order, the Debtors filed a plan of reorganization on June 19, 2015.   Finestone Decl. Ex. B.[3]   The Debtors have until September 18 to convene a meeting of creditors to approve the plan and resolve any objections thereto. Notably, creditors, including Aurelius, have been negotiating in furtherance of a consensual restructuring.   The parties, including Aurelius, have exchanged term sheets, which provide that

---

[2]   *See* Declaration of Renato Fermiano Tavares, *In re OAS S.A.,* Case No. 15-10937 (SMB) (Bankr. S.D.N.Y.) [Dkt. No. 4] ("Tavares Dec.") ¶ 3.   A copy of the Brazilian Bankruptcy Court Order and a certified translation are Exhibits "A" and "B" to the Tavares Dec.   This Court may consider these and similar materials.   *See, e.g.*, *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 267-68 (S.D.N.Y. 2005) (court may consider documents of which the plaintiff has actual notice and relied upon in drafting the complaint, and "may take judicial notice of public records and of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action").

[3]   OAS' plan and related term sheets are publicly available at:   http://www.oas.com/oas-com-1/noticias/apresentation-of-plan-of-reorganization-restructuring-settlement-negotiations.htm

"all pending litigation commenced by … Aurelius … against any member of the OAS RJ Group, including in Brazil, the US, and elsewhere, will be dismissed…." Finestone Decl. Exs. C-D.

### C. The U.S. Chapter 15 Proceeding

On May 19, 2015, in OAS' pending proceedings under chapter 15 of title 11 of the U.S. Code (the "Chapter 15 Cases"), the Bankruptcy Court held an evidentiary hearing concerning OAS' petition for recognition of the Brazilian Bankruptcy Proceeding (the "Recognition Hearing"). The Bankruptcy Court granted recognition on July 13, 2015. *See* Dkt. No. 81, case no. 15-10937 (Bankr. S.D.N.Y.).[4] The Court held that the debtors' center of main interests is in Brazil, and that creditors were aware that they "might ultimately have to enforce their rights in a Brazilian bankruptcy proceeding." *Id.* at 32. The Court further held that Aurelius failed to mount "a serious challenge to the fairness of the Brazilian Bankruptcy Proceedings," that "'Brazilian bankruptcy law meets our fundamental standards of fairness and accords with the court of civilized jurisprudence,'" *id.* at 33 (quoting *In re Rede Energia S.A.*, 515 B.R. 69, 98 (Bankr. S.D.N.Y. 2014)), and that creditors "have received due process in Brazil," *id.* at 35.

### III. ARGUMENT

### A. The Action Should Be Dismissed Based On International Comity

When, like here, a plaintiff asserts claims directly against debtors in pending bankruptcy proceedings, the international comity analysis is simple and straightforward: Aurelius should pursue its claims exclusively in the centralized forum of the Brazilian Bankruptcy Proceedings where all other creditors are present, and should not be allowed to pursue those claims in this Court nearly five thousand miles from Brazil and where only Aurelius is present.

---

[4]   Even without recognition, international comity warranted dismissal of this action independently from Chapter 15 (or its predecessor, the former 11 U.S.C. § 304). *See, e.g.*, *JP Morgan*, 412 F.3d at 425 n.2; *Oui Fin. LLC v. Dellar*, 2013 U.S. Dist. LEXIS 146214 at *13 n.8 (S.D.N.Y. Oct. 9, 2013) (dismissing breach of contract and fraud suit in comity to a French reorganization proceeding even though no Chapter 15 case was filed).

The Second Circuit has repeatedly affirmed the dismissal of claims such as Aurelius' on international comity grounds, holding "that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." *JP Morgan*, 412 F.3d at 424, 427 (dismissing in deference to Mexican bankruptcy proceeding); *see also Finanz AG Zurich v. Banco Economico SA*, 192 F.3d 240, 246 (2d Cir. 1999) (Brazilian non-judicial liquidation proceeding); *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1000 (2d Cir. 1993) (Australian liquidation proceeding).   In the bankruptcy context, comity is especially important because "the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding [so] American courts regularly defer to such actions." *JP Morgan*, 412 F.3d at 424.

These authorities plainly apply here.  In this Court, Aurelius, one of the Debtors' many creditors, seeks to recover for itself alone "the transferred property or its value" that were the subject of the Transfers.  A/C ¶ 14.[5]  But the Brazilian Bankruptcy Proceeding is a centralized proceeding to adjudicate the rights of *all* creditors' claims against the Debtors.   That the Brazilian Bankruptcy Proceeding is the centralized and appropriate forum for adjudication of creditors' rights is apparent not only from basic bankruptcy policy under the cases cited above, but also from the Brazilian Bankruptcy Court's order suspending all actions or collection

---

[5]  Even if the claims asserted by Aurelius were against third parties and not against Debtors, the analysis would remain unchanged.   The assertion of Aurelius' claims still would offend international comity because, as discussed below, putative fraudulent transfer claims are the subject of and will be resolved or litigated in connection with the Brazilian Bankruptcy Proceedings.   Thus, Aurelius' claims should be dismissed even if they were, hypothetically, against non-Debtors.  *See Allstate*, 994 F.2d at 1000 (affirming dismissal of claims against individual non-debtors because allowing those "claims to go forward in the United States despite the dismissal as to the [foreign debtor] companies would defeat the purpose of granting comity in the first place").  This is consistent with U.S. bankruptcy law, which operates to stay fraudulent transfer claims even when asserted against non-debtors.  *See In re Colonial Realty Co.*, 980 F.2d 125 (2d Cir. 1992) (staying creditor-FDIC's attempt to recover a voidable transfer because such action seeks to recover on a claim against the bankrupt in violation of the automatic stay).

proceedings—such as Aurelius' action in this Court—that have been brought against the Debtors.  Brazilian Bankruptcy Court Order, Finestone Decl. Ex. A p. 3330.  It is also apparent from subsequent orders of the Brazilian Bankruptcy Court in which it—like the Bankruptcy Court—has concluded that "there is no doubt that the COMI (Center of Main Interests) [for each of the Debtors] is Brazil."  Finestone Decl. Ex. E pp. 8,661–8,665.

The Debtors' other U.S. creditors have confirmed the point, explaining in the Chapter 15 Cases that Aurelius' suit in this Court is "very likely to damage the interests of creditors, and frankly quite significantly, and as a consequence, we have not opted to proceed in that pathway…. And, of course, we would not wish to see our good faith efforts and the apparent good faith efforts of OAS to negotiate a plan of reorganization under the Brazilian law thwarted or frustrated by the efforts of some creditors to prefer themselves at the expense of others." Counsel to Ad Hoc Note Holder Group, Finestone Decl. Ex. F 46:9-12, 47:20-24.

Comity is especially warranted here because the very same fraudulent transfer claims alleged by Aurelius in this Court have been presented in the Brazilian court system.  In Brazil, Aurelius challenged the Merger, *see* Tr. of Recognition Hearing, Finestone Decl. Ex. G 136:13-18 ("Aurelius brought a suit to eliminate this merger."), and has filed a petition in a Brazilian court asserting that all of the Transfers were fraudulent as to creditors, *see* Suppl. Decl. of Bruno Kurzweil de Oliveira Ex. J (wherein Aurelius alleges that the Transfers were a "fraud" on creditors and subject to annulment).[6]  Other creditors also have challenged the Invepar Transfer in Brazil, and have obtained provisional relief.  *See* A/C ¶ 102.[7]

---

[6]   Declaration and Supplemental Declaration of Bruno Kurzweil de Oliveira Ex. E-K.  Indeed, Aurelius' Brazilian challenge to the Merger has succeeded on an interim basis:  By order dated March 6, 2015, the 9th Civil Lower Court of São Paulo stayed the effects of the Merger.

[7]   Declaration of Bruno Kurzweil de Oliveira Ex. A-D (orders entered to "prevent the property being dissipated, to the detriment of other creditors in a possible future recovery scenario.").

All of these proceedings are subject to the Brazilian Bankruptcy Proceedings, in which Aurelius is indisputably an active "participant." *See* May 20 Joint Letter [Dkt. No. 21]. Most importantly, as Aurelius' allegations reflect, the Debtors' reorganization plan will address Aurelius' claims, consistent with the wishes of a majority of creditors and the oversight of the Brazilian Bankruptcy Court. A/C ¶ 65 (acknowledging that creditors may vote to "moot" Aurelius' claims). Resolution of such claims under a plan is consistent with U.S. law. *See* 11 U.S.C. § 1123(b)(3)(A) (providing for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" under a plan); *see also In re NII Holdings, Inc.*, Case No. 14-12611, Dkt. No. 831 (Bankr. S.D.N.Y. Jun. 19, 2015) (confirming chapter 11 plan for which Aurelius is plan proponent under which inter-debtor fraudulent transfer claims were settled over the objection of dissenting minority creditors). Aurelius itself has submitted term sheets to the Debtors that contemplate the dismissal of "all pending litigation commenced by" Aurelius.

To be sure, if the Brazilian forum did not comport with fundamental standards of procedural fairness, comity might be inappropriate. *See JP Morgan*, 412 F.3d at 428. But there is no evidence that this is the case, and to the contrary U.S. courts—including the Bankruptcy Court in this case—have held that Brazil's bankruptcy law and bankruptcy courts amply qualify for comity. In *Finanz*, the Second Circuit rejected the argument that affording comity to an extrajudicial Brazilian liquidation proceeding would violate U.S. notions of due process or fundamental fairness. 192 F.3d at 250. The U.S. Bankruptcy Court recently reached the same conclusion, holding that "Brazilian law provides for a 'comprehensive procedure' for the orderly and equitable distribution of the [] Debtors' assets to creditors," *Rede Energia*, 515 B.R. at 95, and that "Brazilian bankruptcy law meets our fundamental standards of fairness and accords with

the course of civilized jurisprudence." *Id.* at 98.[8]  Consistent with these holdings, an expert in the Chapter 15 Cases testified that Brazilian law provides ample opportunities for creditors such as Aurelius to pursue claims seeking to void a putatively "fraudulent" or preferential transfer. *See* Finestone Decl. Ex. G 133:11-12 ("In Brazil, the one that can question the fraudulent action, it's the creditor …."), 134:10-15 ("What happens is the actions that charge for money values they are suspended during the process of recovery; the funds that are eventually blocked, they stay blocked until it is voted for this plan of recovery for the creditors who have priorities in terms of the recovery of those funds."), 135:3-6, 136:13-18.  Aurelius concedes that creditors may bring such claims, A/C ¶ 65, but merely complains that creditors may also vote to resolve such claims under a plan.  As in a U.S. bankruptcy case, the proceeds of any such resolution in Brazil will benefit all creditors—not just Aurelius as it seeks to do here outside the auspices of the Brazilian Bankruptcy Proceedings.  Finestone Decl. Ex. G 134:16-18; *see Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.  According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property.").  Tellingly, after hearing this testimony and Aurelius' arguments, the U.S. Bankruptcy Court noted that Aurelius "really ha[s]n't mounted a challenge to the Brazilian judicial system."  Finestone Decl. Ex. G 164:5-6.

Nor do choice-of-law and forum provisions in the indentures undermine the argument for a dismissal based on international comity.  *See Canada S. R. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) ("The fact that the bonds made in Canada were payable in New York is unimportant [to deciding *where* the case should proceed as a matter of comity], except in determining by what

---

[8]  *See also Rede Energia*, 515 B.R. at 100 ("[S]ubstantive consolidation for plan purposes, in and of itself, is not manifestly contrary to U.S. public policy …."), 102-104 (Brazilian process "not … fraught with procedural infirmities" and "Brazilian bankruptcy law's cram-down requirements provide protections … similar (but not identical) to those in the United States.").

law the parties intended their contract should be governed….”); *Allstate*, 994 F.2d at 999 (the

“presence of a [New York] forum selection and choice of law clause in the Indenture

Agreement” do not preclude granting comity).   Indeed, even a contractual promise not to seek

dismissal of a U.S. case on comity grounds in deference to a foreign bankruptcy proceeding—

and such a promise is absent from the contractual documents here—does not prevent the U.S.

court from dismissing on international comity grounds.  As explained in *JP Morgan*:

> [T]he fact that such clauses are in an agreement between the parties does not preclude a court from deferring on grounds of international comity to a foreign tribunal where deference is otherwise warranted.  *See Allstate Life Ins. Co.*, 994 F.2d at 1000.  In other words, regardless of the parties’ pre-litigation agreement, once a party declares bankruptcy in a foreign state and a foreign court asserts jurisdiction over the distribution of assets, U.S. courts may defer to the foreign bankruptcy proceeding on international comity grounds.  Consequently, … reliance on the loan agreement’s forum selection and choice of law clauses is unavailing.

412 F.3d at 429; *see also Oui Financing*, 2013 U.S. Dist. LEXIS 146214, at *31 (similar).

Under squarely applicable Second Circuit law, this Court should dismiss on comity

grounds.  Aurelius may continue to advance (or negotiate) its claims in Brazil where other

creditors are proceeding and where the Debtors’ assets will be administered centrally to

maximize value for all stakeholders consistent with fundamental bankruptcy policy goals.

**B.      The Action Should Be Dismissed Because Aurelius Lacks Standing**

Aurelius lacks standing to bring its claims for two reasons.  *First*, the Notes contain a “no

action” clause, which prohibits an individual noteholder such as Aurelius from pursuing any

claims relating to the Indentures or the Notes, except as provided in the Indentures.  The

Indentures do not provide that Aurelius may bring this action.

“[A] no-action clause prevents minority securityholders from pursuing litigation against

the issuer, in favor of a single action initiated by a Trustee upon request of a majority of the

securityholders.”  *Quadrant*, 23 N.Y.3d at 565.  No-action clauses “protect against the risk of

10

strike suits" by "mak[ing] it more difficult for individual bondholders to bring suits that are unpopular with their fellow bondholders." *Id.* (internal quotation marks omitted). "These clauses also ensure that the proceeds of any litigation actually prosecuted will be shared ratably by all bondholders." *Id.*

As *Quadrant* recognized, "a no-action clause … that refers specifically to claims and remedies arising under the indenture *and the securities*, applies to all claims," including fraudulent conveyance claims that arise under common law or statute. 23 N.Y.3d at 564 (emphasis added). The Notes here use this broad formulation, providing that "Securityholders may not enforce the Indenture *or the Securities* except as provided in the Indenture." *See* Exhibit 1 to Indenture App'x, Form of Security ¶ 13 (emphasis added). Noteholders thus may not pursue *any* claims unless they are authorized to do so under the Indentures. This includes the fraudulent conveyance and unjust enrichment claims asserted in the Amended Complaint.

Nothing in the Indentures provides Aurelius the ability to bring the claims in its Complaint.[9] Sections 6.02 through 6.04 authorize the *Indenture Trustees* to bring various types of actions in the event of defaults or bankruptcy. They do not authorize actions by individual noteholders. Section 6.01 does authorize *Securityholders* (*i.e.* record owners) to bring a "proceeding, judicial or otherwise, with respect to this Indenture," but only after compliance with a procedure that includes a request by at least 25% of the Securityholders to the Indenture Trustee to bring suit, the indemnification of the Indenture Trustee, and the passage of a 60-day period. Aurelius has not alleged that it complied with these procedures. Moreover, even if it did

---

[9]  Although the Indentures govern in the event of any *conflict* with the Notes/Form of Security, ¶ 4, there is no conflict here. This is not a situation in which the Notes prohibit a suit that the Indentures affirmatively authorize. The Indentures nowhere affirmatively authorize a suit like Aurelius' (even if the prohibition in Notes extends further than the Indentures): Aurelius cannot cite any provision in the Indentures that grants individual noteholders the right to bring fraudulent conveyance actions.

comply, Section 6.01 only authorizes a suit only "with respect to" the Indentures, and not with respect to the Notes themselves.  This provision does not encompass the fraudulent transfer claims that Aurelius seeks to assert here.  *See Quadrant*, 23 N.Y.3d at 564.

*Second*, apart from the no-action language, Aurelius lacks standing because it is merely a "beneficial owner" of the Notes, *see* A/C ¶¶ 3, 5, 33, and not a record "Holder" or "Securityholder" under the Indentures.  Nor has it established that the registered Holder has properly assigned ownership or title to the claims to Aurelius as is required.

The Indentures grant numerous rights to "Holders" and "Securityholders," who are "the Person[s] in whose name a Security is registered on the Registrar's books," in this case, Cede & Co. ("Cede").  Indentures § 1.01; A/C ¶ 40.  The limitation of rights to "Securityholders" and "Holders" is the express intent of the Indentures.  The documents recognize that there may also be "beneficial owners" or "beneficial interest" holders, as Aurelius claims to be.  With very limited exceptions, however, beneficial holders have no direct rights under the Indentures, Notes, and guarantees, and must instead rely upon the Holders/Securityholders and Indenture Trustees to enforce them.  *See, e.g.*, Indentures § 4.27(b) (beneficial owners will be indemnified for taxes in the event a Substituted Issuer is organized in a different jurisdiction).

In *Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.à.r.l.*, 996 N.Y.S.2d 476 (N.Y. Sup. Ct. 2014), the court dismissed for lack of standing claims for fraudulent conveyance, alter ego, and unjust enrichment brought by a beneficial owner that, like Aurelius, was not the record holder of the underlying notes.  In ruling that "only a Holder (or the trustee) is authorized by the indenture to sue on the Notes," 996 N.Y.S.2d at 489, the court relied upon the definition of "Holder" in the Hellas indentures:  "with respect to any Note, the Person in whose name such Note is registered in the register maintained by the registrar pursuant to the provisions of this Indenture."  *Id.* at 484.

Aurelius alleges that Cede has "authorized" Goldman Sachs to assert this claim, and that Goldman Sachs has "in turn" "authorized" Aurelius.   A/C ¶¶ 40-42.   The Second Circuit, however, has held that more is needed to satisfy the requirements of constitutional standing.   *See Cortlandt St. Recovery Corp. v. Hellas Telecomms.,* Case No. 13-3325, 2015 U.S. App. LEXIS 10655, at \*11 (2d Cir. Jun. 24, 2015) (affirming dismissal of fraudulent conveyance claim where complaint did not "indicate that Cortlandt was assigned *ownership* of the claims").   As reflected below, the assignment language in *Cortlandt* was identical in substance to the "authorization" language Aurelius attempts to rely upon here:

| *Cortlandt* Authorization To Sue | Aurelius' Authorization To Sue |
| --- | --- |
| The Noteholder hereby assigns to Cortlandt Street Recovery Corp. … . ***full rights to collect amounts of principal and interest due on the Notes, and to pursue all remedies with respect to the Notes*** against Hellas Finance [or related entities] … and any other person or entity who may be liable to Noteholder.  ***The Noteholder remains the owner of the Notes and person in whose name the Notes are registered.***<br><br>The Noteholder hereby irrevocably appoints [Cortlandt] its true and lawful attorney and proxy, with full power of substitution, to pursue collection and all remedies with respect to the Notes ….  Under this appointment [Cortlandt] shall have all requisite power and authority … to make any request or demand or to take any other action under or with respect to the Notes, or under the December 21, 2006 Indenture under which the Notes were issued.<br><br>2015 U.S. App. LEXIS 10655, at \*3 n.1 (emphasis added). | At the request of [Goldman Sachs], on behalf of Huxley, ***Cede & Co. … as holder of record of the 8.00% Notes***, hereby authorizes [Goldman Sachs] to take the following actions … ***exercise any and all rights and remedies*** (including, without limitation, giving notice of default, electing to accelerate, giving notice of acceleration, ***demanding payment, bringing any enforcement action***, and filing one or more proofs of claim), whether against OAS Finance Limited, the Guarantors, or any other person or entity, or otherwise, provided in any of the Indenture, the 8.00% Notes, any guarantees thereof, and the other documents relevant to the 8.00% Notes, or available under applicable law or in equity, which Cede[], as holder of the 8.00% Notes, is entitled to take, without prejudice to the rights of the Trustee ….<br><br>A/C Ex. G (emphasis added); *see also* A/C ¶ 42. |

Under *Cortlandt*, Aurelius' "authorization" is insufficient.   Assignees must take *ownership* of the "entire interest" in a claim, not merely the right to "pursue all remedies with

respect to the Notes."  *Id.* at *11-12.  Aurelius does not allege it has been assigned record ownership or title of the claims, which the documents attached to the Amended Complaint confirm.  Moreover, while the Notes purport to permit delegation of the right to sue to non-record holders, parties cannot manufacture federal jurisdiction over an action by agreement.  In any event, Aurelius failed to obtain any authorization in accordance with the Notes; nothing in the Notes permitted the purportedly "authorized" party (Goldman Sachs) to sub-delegate its right to sue to Aurelius.  Accordingly, Aurelius lacks standing to assert its claims.[10]

### C.    The Action Should Be Dismissed With Respect To Engenhario And Infraestrutura Because This Court Lacks Personal Jurisdiction As To Them

Neither Engenhario nor Infraestrutura is qualified to do business in New York, conducts business in New York, has a New York presence or agent for service of process, or has committed any alleged act in New York related to this action or otherwise.  Neither Defendant is a party to the Indentures, and neither has consented to jurisdiction in New York.  Accordingly, this Court lacks personal jurisdiction over these recipients of two of the three Transfers at issue.

A U.S. court may not exercise personal jurisdiction over an out-of-state defendant unless the defendant has "certain minimum contacts … such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (dismissing claims based on defendant's lack of minimum contacts with the forum state).  In order to be subject to general jurisdiction, defendants must have "affiliations

---

[10]  *Fontana v. Republic of Argentina*, 415 F.3d 238 (2d Cir. 2005), and *Applestein v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005), are distinguishable and thus had no effect on the Second Circuit's holding in *Cortlandt*.  In *Applestein*, the defendant waived the standing argument and, in any event, plaintiff had previously conceded that the permission to sue was effective.  415 F.3d at 245-46.  In *Fontana*, the court remanded for further proceedings in view of the fact that the defendant conceded that the plaintiffs "would have been able to bring suit" if authorized, and also noting that defendant "may have waived" the standing argument.  415 F.3d at 241-42.  In neither case did the defendant argue a lack of Article III standing, which is the basis for the Second Circuit's decision in *Cortlandt*.

with the State in which suit is brought … so constant and pervasive as to render [them] essentially at home in the forum State." *Daimler AG v. Bauman,* 134 S. Ct. 746, 751 (2014). Aurelius does not allege that either Engenhario or Infraestrutura has such contacts with New York, or indeed any contacts at all.

Nor has Aurelius alleged a basis for specific jurisdiction over Engenhario or Infraestrutura. To exercise specific jurisdiction "consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. Moreover, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 1122 (*quoting Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985) (emphasis in original)). That the allegedly injured plaintiff may have contacts with the forum State does not confer jurisdiction over the defendant. *Id.* ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

Aurelius alleges no connection whatsoever between Engenhario or Infraestrutura and New York, whether related to the specific conduct alleged in the Complaint or otherwise. The only allegation is that Aurelius itself has contacts with New York, but that is not sufficient to confer personal jurisdiction over Engenhario or Infraestrutura, *Walden*, 134 S. Ct. at 1122-23, even if the alleged injury to Aurelius may have been foreseeable to the defendants. *Id.* at 1124-25 (finding no specific jurisdiction in Nevada notwithstanding that defendants knew the plaintiffs' connections with Nevada and that they "suffered foreseeable harm in Nevada").

Lacking a sufficient basis for this Court to assert personal jurisdiction over Engenhario or Infraestrutura based on their own actions, Aurelius alleges that personal jurisdiction may be asserted because these entities are the "alter ego" or "mere department" of entities (OAS and Investimentos, respectively) that are parties to the Indentures. This approach too fails.

Piercing the corporate veil requires a showing that: (1) the owners exercised "complete domination" of the corporation in respect to the transaction attacked; and (2) such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 141 (N.Y. 1993). Although proof of both elements is required, "*complete domination* of the corporation is the key to piercing the corporate veil." *Id.* (emphasis added).

Unsurprisingly, to establish "complete domination," it is not sufficient to allege that a parent owns a subsidiary and, as a consequence, exercises the very broad level of control that a sole shareholder would have. *See Daimler*, 134 S. Ct. at 759-60 (holding parent-sub relationship insufficient to establish personal jurisdiction); *Capmark Fin. Group Inc. v. Goldman Sachs Credit L.P.*, 491 B.R. 335, 349-50 (S.D.N.Y. 2013) (granting motion to dismiss with prejudice based on "allegations [that] do not allege facts beyond relationships 'typical of a majority shareholder or parent corporation,'" *quoting Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2d Cir. 1995)). "Disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations of dominance and control will not suffice to defeat a motion to dismiss." *Societe d' Assurance de l'Est SPRL v. Citigroup, Inc.*, No. 10 Civ. 4754 (JGK), 2011 WL 4056306, at *5 (S.D.N.Y. Sep. 13, 2011).

Mere allegations that a parent controls "the election of directors, the making of by-laws, and the doing of all other acts incident to the legal status of stockholders" are insufficient to pierce the corporate veil. *United States v. Bestfoods*, 524 U.S. 51, 62 (1998). "Nor will duplication of some or all of the directors or executive officers be fatal," *id.*, any more so than the consolidated public reporting of financial statements, *see Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.* 751 F.2d 117, 121 n.3 (2d Cir. 1984). "The separate corporate existences of parent and subsidiary will not be set aside merely on a showing of common

management of the two entities, nor on a showing that the parent owned all the stock of the subsidiary." *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011).[11]

Aurelius' allegations fall far short of what is required to demonstrate "complete domination."   A/C ¶¶ 85, 104.   There are no allegations of failure to maintain corporate formalities, lack of separate books and records, comingling of assets, or inadequate capitalization.   Nor is there any allegation that Engenhario or Investimentos were formed or maintained in connection with the Transfers or for any other improper purpose.   Rather, the sole allegations of "control" are those that one would expect from any typical parent/subsidiary relationship—common ownership, a common Brazilian headquarters, and *some* common management.   "That a subsidiary shares employees, officers, and directors with a parent does not permit the corporate form to be disregarded." *Capmark*, 491 B.R. at 350. [12]

Nor are Engenhario or Infraestrutura "mere departments" of their respective parents. Under the "mere department" theory, New York courts have exercised personal jurisdiction over a foreign parent corporation if it has been conducting business in New York through a subsidiary

---

[11] In determining whether "complete domination" or control exists, the Second Circuit has considered various factors such as:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997).  However, even when some factors may be present, alter ego cannot be established when they merely show a "usual parent-subsidiary relationship."  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2d Cir. 1995).

[12]  Moreover, Aurelius has no standing to assert an alter ego claim because the harm that such a claim would purportedly redress would be harm suffered by Investimentos and OAS, and only upon their creditors derivatively.

that has been acting as its agent.  *See Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998).  "To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'"  *Id.* (*quoting Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 537 (1967)).

The Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), raises serious questions about the continued vitality of the "mere department" doctrine and the assertion of general jurisdiction based upon "agency" or similar principles.  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224-25 (2d Cir. 2014).  In *Daimler*, the Ninth Circuit held that a German corporation was subject to personal jurisdiction in California based upon the facts that it had "the right to substantially control" its subsidiary (Mercedes-Benz USA), and that its subsidiary's activities in California were "important."  134 S. Ct. at 759-60. In reversing, the Supreme Court held that an agency relationship was not sufficient to establish general jurisdiction over the foreign parent.  The Supreme Court also noted that—very relevant here—because the defendant in *Daimler* was a foreign corporation, principles of international comity had to be considered before subjecting it to jurisdiction in the U.S.  *Id.* at 762-63.

While the Supreme Court recognized that an agency relationship may, in some cases, be a basis for specific jurisdiction over the principal, the Court was referring to a situation in which the out-of-state principal "direct[s] its agents or distributors to take action" in the forum.  *Id.* at 759 n.13.  There is no allegation here that Engenhario or Infraestrutura directed their "agents" (*i.e.*, their parents) to do anything in New York (or anywhere else); to the contrary, Aurelius alleges that Engenhario or Infraestrutura were the ones who were being directed by others (not in New York, but in Brazil) to accept the allegedly fraudulent transfers (also not in New York, but in Brazil).  Subjecting Engenhario and Infraestrutura to New York jurisdiction on these facts would turn agency theory on its head, making the alleged "agents" (Engenhario or Infraestrutura)

18

subject to jurisdiction based upon the alleged actions of their principals. *See McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, 2015 U.S. Dist. LEXIS 3347, at *18 (S.D.N.Y. Jan. 12, 2015) (citing the "well-established principle" that agents are not bound by the acts of their principals).

In any event, even if the "mere department" theory were still a viable basis for the assertion of personal jurisdiction after *Daimler*, and even if the theory could be applied in reverse (to sustain jurisdiction over an agent for its principal's conduct), Aurelius has failed to allege sufficient facts to prove it. "The relevant factors for establishing mere department jurisdiction are the veil piercing factors minus the fraud prong*." Cargill Soluciones Empresariales, S.A., de C.V, SOFOM ENR v. WPHG Mexico Operating, L.L.C.*, Case No. 651242/2014, 2015 N.Y. Misc. LEXIS 1470, at *13 (N.Y. Sup. Ct. Apr. 24, 2015). Thus, as with alter ego, Aurelius must allege far more than common ownership; it must allege: financial dependence, parent interference, failure to observe corporate formalities, and a meaningful degree of parent control. *See Jazini*, 148 F.3d at 184.

Aurelius fails to allege the financial dependence of Engenhario nor Infraestrutura on their respective parents, fails to allege parent "interference" of any kind, and fails to allege any remarkable control over operational policies (beyond the *per se* control a parent exercises over its subsidiary). A/C ¶¶ 85, 104. Aurelius actually alleges the opposite; its allegations reflect that corporate formalities were very much respected, including with respect to separate officer titles, issuance of stock certificates inherently reflecting corporate separateness, and separate corporate minutes. *Id.* Aurelius has not alleged any basis to disregard the corporate distinctions between Engenhario, Infraestrutura, and their parents. There is no basis to subject them to jurisdiction in New York simply because their parents may be subject to such jurisdiction.

**D.      The Action Should Be Dismissed With Respect To Engenhario And Infraestrutura Because New York's Debtor-Creditor Law Cannot Be Applied Extraterritorially To These Entities**

Even if this Court had personal jurisdiction over Engenhario and/or Infraestrutura, the Amended Complaint should still be dismissed with respect to these entities because New York's Debtor-Creditor Law does not apply extraterritorially to Brazilian entities that engaged in no activity in the U.S. and did not consent to the application of New York law.

"The established presumption is, of course, against the extraterritorial operation of New York law." *Global Reinsurance Corp.-U.S. Branch v. Equitas Ltd.*, 18 N.Y. 3d 722, 735 (2012); *see also Manfredonia v. Am. Airlines, Inc.*, 68 A.D.2d 131, 137 (N.Y. App. Div. 1979) ("New York recognizes the general rule that a statute is presumed to apply only within the State …."); *cf. Morrison v. Nat'l Austl. Bank, Ltd.*, 561 U.S. 247, 255 (2010) (where "a [federal] statute gives no clear indication of an extraterritorial application, it has none").   To overcome this presumption, there must be a "very close nexus" between the alleged wrongdoing and harm suffered in the forum state. *Global Reinsurance*, 18 N.Y.3d at 736.

Nothing on the face of New York's Debtor-Creditor Law provisions on fraudulent conveyances indicates an intent to reach transactions and defendants beyond the borders of New York, and indeed those of the U.S.   Moreover, even if New York law may be applied in some contexts, the required "very close nexus" is not present here.   All of the Transfers occurred in Brazil, involved Brazilian assets, and were among Brazilian corporations.   There is no allegation that any elements of the Transfers were planned or implemented in the United States.   Moreover, while Aurelius alleges Plaintiff Huxley Capital Corporation [13] to be a Delaware entity headquartered in New York, there is no material allegation that *any* other New York entities

---

[13]   Huxley was not even in existence at the time of the alleged harms, and Aurelius fails to disclose from whom it acquired its "beneficial interest" in Notes two weeks before suing.

were harmed by the transfers.  As discussed *supra*, the Transfers are the subject of pending actions in Brazil, brought by creditors outside of the United States and based upon Brazilian law. Applying New York law to this action, and with respect to a single plaintiff, would violate principles of comity, risk inconsistent results, and prejudice other interested parties.  The presumption against extraterritoriality recognizes these concerns and should be applied here.[14]

Further, even if New York fraudulent conveyance laws can be applied extraterritorially in some cases, doing so here would not be appropriate under New York choice-of-law principles. Under New York law, when an action invokes laws that are "conduct regulating" (as fraudulent conveyance law is), "the law of the jurisdiction where the [alleged acts] occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Licci v. Lebanese Canadian Bank*, 739 F.3d 45, 49 (2d Cir. 2013) (internal quotations omitted). The only connection to New York is Aurelius—the party alleging injury.  But, as the Second Circuit has made clear, that is not a basis for applying New York law.  *Id.* at 49.  As to Engenhario and Infraestrutura (which have not consented to New York law or jurisdiction), the laws of Brazil govern any alleged fraudulent conveyances or "unjust enrichment."

### E.    The Amended Complaint Should Be Dismissed Because Engenhario And Infraestrutura Are Indispensable Parties That Cannot Be Joined

Following the dismissal of the Amended Complaint as to Engenhario and Infraestrutura—on lack of personal jurisdiction or extraterritoriality grounds—this action must be dismissed for failure to join indispensable parties under Federal Rule of Civil Procedure 19.

---

[14]  While some federal courts have applied New York's fraudulent conveyance laws to foreign transfers, *see, e.g., Eclaire Advisor Ltd. v. Daewoo Eng'g & Constr. Co.*, 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005), no New York state court has done so, nor has any court done so since the New York Court of Appeals decided *Global Reinsurance*, which made clear New York's presumption against extraterritorial application of its laws.  The most recent court presented with the issue declined to decide the extraterritorial reach of New York fraudulent conveyance laws. *See In re Hellas Telecomms. (Lux.) II SCA*, 524 B.R. 488, 502 n.23 (Bankr. S.D.N.Y. 2015).

Aurelius alleges that Engenhario and Infraestrutura received two of the three allegedly fraudulent conveyances at issue (the third Transfer—the Merger—has been stayed by Aurelius' own actions in Brazil).  The alleged recipient of a fraudulent conveyance is a "necessary" party to any litigation to avoid the transfer.  *See Motorola, Inc. v. Abeckaser*, 2010 U.S. Dist. LEXIS 7405, at *18-19 (S.D.N.Y. Jan. 29, 2010); *In re M. Fabrikant & Sons, Inc*., 394 B.R. 721, 744 (Bankr. S.D.N.Y. 2008) ("A transferee that retains title to or an interest in the property conveyed is a necessary party to the fraudulent transfer action, because the fraudulent transfer action will affect the transferee's title or interest." (internal citation omitted)).  Because Aurelius seeks to avoid Transfers to Engenhario and Infraestrutura, enjoin them from distributing the assets, and require them to turn over the assets, Engenhario and Infraestrutura clearly are necessary parties.

Rule 19(b) requires dismissal of this action if it cannot proceed "in equity and good conscience" in the absence of Engenhario and Infraestrutura.  The four factors set forth in Rule 19(b) strongly favor dismissal: (1) a judgment rendered without Engenhario and Infraestrutura would prejudice the other Defendants, who are not in possession of the subject assets; (2) any other remedy vis-à-vis the Defendants would be inconsistent with the Brazilian Bankruptcy Proceedings, and thus would prejudice Defendants and their other creditors who are not parties to this action; (3) a judgment in the absence of Engenhario and Infraestrutura could not affect the Transfers that Aurelius seeks to avoid; and (4) Aurelius has adequate remedies in the Brazilian proceedings, and it is in fact pursuing through both litigation and negotiation in Brazil.

### F.   The Complaints' Counts 1, 3, And 5, Alleging "Actual Fraudulent Conveyance," Must Be Dismissed For Failure To Plead With Particularity

Aurelius' actual fraudulent conveyance claims fail because they do not state "with particularity the circumstances constituting the fraud."  Fed. R. Civ. P. 9(b).  Counts 1, 3, and 5 allege actual fraudulent conveyances and "are subject to the heightened pleading requirements of

Rule 9(b), and allegations must be plead with particularity as to each and every defendant." *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA, 2014 WL 2610608, at *44 (S.D.N.Y. June 10, 2014) (dismissing fraudulent conveyance claim for failure to "plausibly allege Defendants' actual intent with particularity"); *see also Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987) ("allegations of violating DCL § 276 must plead the requisite mental state with particularity").   Specifically, Aurelius was required to plead fraud with particularity for putative transferors Construtora for the Construtora Asset Transfer (Count 1); Investimentos for the Invepar Share Transfer (Count 3); and Investmentos for the Merger (Count 5).   Aurelius fails to do so; therefore, dismissal is appropriate.

### 1.   The Construtora Transfer

Aurelius' own allegations do not plausibly plead an actual fraudulent conveyance with respect to the Construtora Transfer.   As alleged, Construtora transferred assets to Engenhario, which is not an obligor on the Notes.   A/C ¶ 76.   Aurelius concedes that Engenhario was a wholly-owned subsidiary of OAS with "no creditors" and was therefore definitively solvent.   *Id.* Thus, no value was taken away from the Noteholders, because the value of the transferred assets was merely re-allocated to OAS' equity ownership in Engenhario, remaining available to the Noteholders because they have guaranty claims against OAS.

The balance of Aurelius' allegations are conclusory in nature or irrelevant, given that no value was taken from away from the assets to which the Noteholders could look for a recovery. For example, Aurelius does not explain how the Construtora Transfer could plausibly "prevent the Noteholders from reaching those assets."   A/C ¶ 86.   Nevertheless, Aurelius does not even allege the lynchpin of its flawed theory with any particularity whatsoever—*i.e.*, that no consideration was paid to Construtora.   Aurelius merely alleges that it does not believe any consideration was paid because the board minutes and financial statements do not identify any.

A/C ¶ 78.  The foregoing—taken in combination with the fact that, as alleged, the transfer was voluntarily publicly-disclosed, *id.* ¶ 82—reflects the fact that Aurelius has failed plausibly to allege Defendants' actual intent with particularity.  Count 1 should be dismissed.

### 2.     The Invepar Transfer

Aurelius' allegations concerning the Invepar Transfer also lend no inference of actual fraud, let alone plead fraudulent intent with particularity.  Aurelius alleges that Investimentos "transferred all of the Invepar Shares to its wholly-owned subsidiary," Infraestrutura which "has no creditors."  A/C ¶¶ 91-92.  Again, as with the Construtora Transfer, no value was actually taken away from the Noteholders because the value of the Invepar Shares was merely invested in Investimentos' direct ownership of Infraestrutura.  Infraestrutura can monetize the Invepar Shares for the benefit of its parent, Investimentos, just as the parent could have.  And as with the Construtora Transfer, the Invepar Transfer was voluntarily and publicly disclosed.  A/C ¶ 101.

Aurelius' last ditch effort to allege actual fraudulent intent undercuts all of its previous allegations, leaving all credibility on the floor.  After spending 14 paragraphs of its Amended Complaint describing the alleged "looting" of Construtora, A/C ¶¶ 72-86, Aurelius now complains that the "proceeds of the loan … will go to [Construtora]."  A/C ¶ 95.  Aurelius complains further that Construtora is "now first in line … to recover the Invepar Shares."  A/C ¶ 98.  It is impossible (and certainly implausible) that Defendants are seeking to defraud creditors by looting Construtora while at the same time seeking to place Construtora "first in line."

### 3.     The Merger

Aurelius' allegations concerning the Merger are moot because, as discussed above, the Merger has been enjoined by a Brazilian court.  In any event, the actual fraudulent transfer claim (Count 5) regarding the Merger fails for lack of particularity, especially in view of concessions in the Complaint.  The Merger was voluntarily and publicly disclosed.  A/C ¶ 116.  Moreover, the

putative transfer that Aurelius complains of was expressly authorized by the Indenture, and ratified by the Noteholders, precluding any inference of fraudulent intent vis-à-vis the Notes. *See* Indenture, A/C Ex. B at 62 ("[Investimentos shall not] consolidate with or merge with or into, or convey, transfer [] in one transaction or a series of transactions, all or substantially all of its assets to any Person (*other than [OAS ]*….") (emphasis added); *see also Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, 503 B.R. 348, 383-84 (Bankr. S.D.N.Y. 2014) ("[C]reditors who … have ratified [alleged fraudulent transfer], cannot then seek to have that transfer avoided.").

Moreover, as with the other Transfers, Aurelius does not allege that any assets were transferred outside of OAS—where the Noteholders have claims—or that any insider benefited from these transactions.   Aurelius' implausible theory is—as best interpreted—that Investimentos sought to *prefer creditors* of OAS, by transferring assets to OAS where the Noteholders would have to share with other creditors.   *See* A/C ¶¶ 12, 71 ("[T]he merger has elevated the creditors of Defendant OAS to an equal footing with the Noteholders"; "thereby eviscerating the OAS Investments Guarantee and, with it, the Noteholders' structural seniority over creditors of Defendant OAS").   Not only does Aurelius fail to explain why Investimentos would be so motivated to prefer other creditors, New York law does not prohibit such transfers, recognizing the "reality that distressed debtors must make hard decisions about who to pay and who not to pay."   *HC Schmieding Produce Co., Inc. v. Alfa Quality Produce, Inc.*, 597 F. Supp. 2d 313, 317 (E.D.N.Y. 2009) (*citing In re Sharp Int'l. Corp.*, 403 F.3d 43, 56-57 (2d Cir. 2005) (under New York law a debtor may pay certain creditors, excluding insiders, and leave others unpaid)).   For all of these reasons, allegations concerning the Merger do not satisfy Rule 8's plausibility standard, let alone Rule 9(b).   Count 5 should be dismissed.

## IV.   CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Dated:      New York, New York       QUINN EMANUEL URQUHART
                July 13, 2015              & SULLIVAN, LLP

/s/ Michael B. Carlinsky

Michael B. Carlinsky
Susheel Kirpalani
Benjamin I. Finestone
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemaunel.com
susheelkirpalani@quinnemaunel.com
benjaminfinestone@quinnemaunel.com

K. John Shaffer
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
johnshaffer@quinnemanuel.com

*Attorneys for Defendants*